

FILED

FEB 0 2 2024 *nwk*

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Zafar Sheikh | ) | |
| | ) | |
| Plaintiff | ) | **Amended Complaint** |
| | ) | |
| vs. | ) | **Case No. 1:24-cv-00658** |
| | ) | |
| Bashir Chaudry, Bushra Naseer, Junaid | ) | |
| | ) | |
| Ahmad, Ali Chaudry, Rabia Chaudry, | ) | **Hon. Judge Martha Pacold** |
| | ) | |
| Yakub Chaus dba Yakub Chaus & Co., | ) | |
| | ) | |
| Shamaila Rafiq, Amjad Chaudry | ) | |
| | ) | |
| Syed Jahantab, South Chicago One Inc. | ) | |
| | ) | |
| BCA Investments Inc., Congress & Pulaski | ) | |
| | ) | |
| Real Estate LLC., Nusrat Chaudry, Qadir's | ) | |
| | ) | |
| LLC, Zahdan Ahmed & his designated entity | ) | |
| | ) | |

# VERIFIED COMPLAINT FOR FRAUDULENT
# TRANSFERS, CIVIL CONSPIRACY FOR FRAUD,
# AIDING & ABETTING OF FRAUDULENT TRANSFERS

i

## TABLE OF CONTENTS

**Page**

Facts common to all counts ................................................... **1**

Venue ............................................................................ **2**

Parties .......................................................................... **2**

Plaintiff ........................................................................ **2**

Defendants ..................................................................... **3**

Background ..................................................................... **6**

Default by Defendants & filing of lawsuit ............................... **7**

Debtor's assets prior to Judgment ....................................... **9**

Current Status ................................................................. **26**

Illinois Fraudulent Transfer Act ........................................... **27**

Causes of Action .............................................................. **28**

Count 1 & II Against Bashir for Fraudulent Transfer ................ **31**

Count III & IV Against Naseer for Fraudulent Transfer .......... **33**

Count V & VI Against Safiudin for Fraudulent Transfer ............ **35**

Count VII Against Junai for Fraudulent Transfer ..................... **37**

Count VIII Against Zahdan, Junaid for Fraudulent Transfer ....... **38**

ii

**Count IX Against Jahantab for Actual Fraudulent Transfer** ........... **39**

**Count X Against Jahantab for Constructive fraudulent transfer** ...... **40**

**Count XI Against Rafiq for Actual fraudulent transfer** ................. **41**

**Against Rafiq Constructive Fraudulent Transfers** ........................ **41**

**Count XIII Against Qadir's LLC, Ali & Rabia for constructive** ..... **43**

**& Actual fraudulent transfers** ........................................... **44**

**Count XV Against Chaus dba Chaus & Co., for aiding and abetting** **42**

**fraudulent transfers** ......................................................... **45**

**Count XVI Against Choudhri, Rafiq & Chaus for engaging** ......... **48**

**in Civil Conspiracy to commit fraud** ..................................... **49**

**Count XVIII Against Amjad & BCA for actual fraudulent** ............ **50**

**transfers and constructive fraudulent transfers** ......................... **51**

**Verification by the Plaintiff** ................................................ **53**

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Zafar Sheikh | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. 1:24-cv-00658 |
| | ) | |
| Bashir Chaudry, Bushra Naseer, Junaid | ) | |
| | ) | |
| Ahmad, Ali Chaudry, Rabia Chaudry, | ) | Hon. Judge Martha Pacold |
| | ) | |
| Yakub Chaus dba Yakub Chaus & Co., | ) | |
| | ) | |
| Shamaila Rafiq, Amjad Chaudry | ) | |
| | ) | |
| Syed Jahantab, South Chicago One Inc. | ) | |
| | ) | |
| BCA Investments Inc., Congress & Pulaski | ) | |
| | ) | |
| Real Estate LLC., Nusrat Chaudry, Qadir's | ) | |
| | ) | |
| LLC, Zahdan Ahmed & his designated entity | ) | |
| | ) | |
| John Doe, Hasan Safiuddin | ) | |

## VERIFIED COMPLAINT FOR FRAUDULENT TRANSFERS & CIVIL CONSPIRACY

**NOW COMES THE PLAINTIFF ZAFAR SHEIKH and Complains of the Defendants as Follows:**

## FACTS COMMON TO ALL COUNTS

1.    In this fraudulent transfer suit, the Debtors Bashir Chaudry (Bashir), and Bushra Naseer (Naseer), who owned and controlled assets of way over $10,000,000.00 (Ten Million

dollars) with the knowledge and substantial assistance of a number of Defendants named herein, engaged in a complicated scheme to hide, transfer and otherwise shield their assets from the claims of the Plaintiff. And while Bashir and Naseer were implementing their fraudulent transfer schemes, they selectively transferred their assets worth millions of dollars to their friends, partners, their children including some minor children, relatives and a select group of purchasers in a calibrated and strategic deliberate defaults, all in violation of state laws, Court citations, and liens which prohibited the debtors from transferring their assets.

2-    While the case against Bashir and Naseer was being prosecuted in State Court, both schemed with their attorneys, accountants and close friends and transferred their assets in derogation of the rights of the Plaintiff and in violation of the state court directives. This is an action to void the debtors fraudulent transfers pursuant to the provisions of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 et seq. (the "IUFTA"), and to recover damages from those who conspired with Bashir and Naseer in designing, implementing and executing their fraudulent transfer schemes. Plaintiff also wants the civil co-conspirators and schemers to be held liable for their malfeasance, illegal intrigues and civil conspiracies in aiding and abetting this racket.

## **V E N U E**

3-    Venue is proper as this action is brought under 28 U.S.C. §1332 as this Court has diversity jurisdiction because (a) this action is between citizens of different States with the amount in controversy exceeding $75,000.

2

4-     In addition Venue is also appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), because a substantial portion of the events giving rise to the claims asserted herein occurred in this Judicial District.

## PARTIES

5-     **Plaintiff**

Plaintiff Zafar Sheikh is a citizen of the State of Texas, who had lived in Illinois, prior to seeking retirement in Texas. Plaintiff while conducting business in Illinois had met the debtors and entered into different contracts, business transactions and promissory notes on which the debtors reneged and defaulted.

6-     **Defendants**

**Bashir Chaudry aka Chaudry Bashir: (Bashir)**

Bashir is a resident of Lincolnwood, Illinois who entered into multiple agreements and contracts with the Plaintiff on which he defaulted. Bashir heads and directs other members of his family, organizes and incorporates different corporate entities, instructs his accountant to file corporate returns for himself and those in his family, hires attorneys for himself and other members of his family some of whom have been identified below. Bashir can be described as someone who controls, directs, manipulates, steers, guides and orchestrates all schemes, which other defendants within his family rehearse, and can rightly be conceived as nothing more than pawns. A Court in law division of the Cook County granted a judgment in favor of the Plaintiff Sheikh and against Bashir for $1,535,000.00 in April 2022. (Exhibit A).

**Bushra Naseer: (Naseer)**

3

Bushra Naseer is the sister in law of Bashir and wife of his brother, and resides in Lincolnwood, Illinois. A Court in law division of the Cook County granted a judgment in favor of the Plaintiff Sheikh and against Naseer for $257,000.00 in April 2022. (Exhibit A).

**Ali Chaudry: Ali**

Ali is son of Bashir and lives with his parents in Lincolnwood, Illinois. Ali conforms with Bashir's wishes and Bashir has assigned and transferred businesses and numerous other assets to Ali's name.

**Rabia Chaudry: Rabia**

Rabia is daughter of Bashir and lives with her parents in Lincolnwood, Illinois. Rabia does as instructed by his father Bashir, who has transferred and parked assets in Rabia's name.

**Junaid Ahmed (Ahmad)**

Ahmad is a resident of Cook County, owns Congress & Pulaski Real Estate Inc. Ahmad owns numerous gas stations and has purchased the Gas station Bank Note from Abdelkader.

**Congress & Pulaski Real Estate Inc., (Congress & Pulaski)**

Congress & Pulaski Real Estate Inc., is an Illinois corporation which is owned by Ahmad, and in whose name Ahmad has purchased the Bnk Note from AbdelKader.

**Nusrat Chaudhri: (Chaudhri)**

Chaudhri is a resident of Inverness, Illinois, and a close friend and relative of Bahir. Both Chaudhri and Bashir have been business partners since at least 2005 in one form or

4

another. Chaudhri is conspiring with Bashir in actively helping him conceal and shield his assets.

**Shamaila Rafiq: (Rafiq)**

Rafiq is a resident of Downers Grove, Illinois, and is 50% owner with Bashir in the gas station at 7283 South Chicago Avenue in Chicago. The business is run under the corporate name of South Chicago One Inc.

**South Chicago One Inc.,**

South Chicago One Inc., is an Illinois corporation which is jointly owned by Bashir and Shamaila Rafiq. Gas station at 7283 South Chicago Avenue, Chicago is owned and run under this corporate entity.

**Syed Jahantab (Syed)**

Syed is a resident of Morton Grove, Illinois, and is son of Bashir's friend Sha Jee. Jahantab is a business partner of Bashir, who has transferred and parked couple of liquor stores in Jahantab's name.

**Hasan Soufiuddin: (Safiuddin)**

Safiuddin is a resident of Aurora, Illinois. Bashir sold him a gas station business (not land) which is located at 415 S. Pulaski Avenue, in Chicago.

**Yakub Chaus dba Yakub Chaus & Co., (Chaus)**

Chaus is a resident of Cook County and maintains his office on Peterson Avenue in Chicago. Chaus is a certified public accountant who has actively helped Bashir make numerous shell companies with an intent to park Bashir's assets in the name of those companies in an effort to hide the true ownership of the Companies.

**Amjad Chaudry (Amjad)**

Amjad Chaudry is a partner of Bashir and is a resident of Cook County. Bashir has parked a recently acquired liquor store located in Wheaton, Illinois in Amjad's name.

**BCA INVESTMENTS (BCA)**

BCA is an Illinois corporation, was formed by Chaus for Bashir and Amjad and is registered in the State of Illinois. Business run by Bashir in Wheaton has been parked in BCA' name.

**QADIR'S LLC (QADIR'S)**

Qadir's LLC is a shell Company organized by Bashir with the help of Chaus in which Bashir has parked a luxury house in Lincolnwood, Illinois on this LLC's name.

**Zahdan Ahmad**

Zahdan Ahmad is an Illinois resident who recently purchased the 415 Pulaski Avenue gas station from Congress Pulaski Real Estate Inc., and Junaid Ahmed guised as 'Note Purchase'.

## B A C K G R O U N D

7-    In April 2008 Plaintiff Zafar Sheikh (Sheikh) sold a gas station to Bashir (Bashir) located at 1224 West 59th Street in Chicago. (59th Street gas station). The price of the gas station was set at $1,500,000.00, out of which $300,000.00 was credited to Bashir for improvements by Bashir and the rest $1,200,000.00 was financed by Sheikh. Bashir signed a Note and a mortgage for this amount (Exhibit B).

8-    Few years later, in early 2012 Bashir was able to refinance and obtain a loan from Hanmi bank for $775,000.00 which he paid Sheikh towards the $1,200,000.00 note. That still left a balance of over $425,000.00 payable to Sheikh.

9- Other than that Sheikh had advanced an additional $100,000.00 to Bashir to help purchase the inventory of the gas station, and also made few other cash advances to Bashir for numerous equipment purchases at the gas station, totaling over $125,000.00. (Exhibit C).

Upon getting partial payments towards the purchase of the gas station, in 2012 both Bashir and Sheikh finalized the accounting for the balance owed to Sheikh by Bashir, upon which Bashir signed a Promissory Note for $650,000.00 in favor of Sheikh, agreeing to pay the balance owed to Sheikh no later than 2014. (Exhibit D).

10- In early February 2012, Bashir sold 50% share in the 59th Street gas station to Aslam. Aslam was notified upon purchasing the gas station that Bashir owed Sheikh a balance of $650,000.00 and that Bashir had signed a Promissory Note to pay Sheikh all amounts still owed on the gas station by 2014. Aslam promised to make sure that those sums were paid to Sheikh on time, so the Gas Station could be owned and run free and clear of all liens.

11- Apart from the $650,000.00, as mentioned above, Bashir and his sister in law Naseer obtained another $200,000.00 from Sheikh and promised to pay that sum upon the sale of the gas station both owned at 415 South Pulaski Avenue in Chicago. (Exhibit E).

## CHAUDRY & NASEEER'S DEFAULT PROMPTED A LAWSUIT
## AGAINST THE BORROWERS

12- Bashir failed to pay Sheikh by 2014 as agreed in the Promissory Note, causing a default on the obligations under the Note. Pulaski gas station was also sold by Bashir and Naseer and despite its sale failed to pay monies owed to Sheikh. Both Bashir and Naseer had

7

violated the terms of their Notes and were in default on making payments on over $850,000.00 in loans.

13- Sheikh made numerous attempts to collect and both Bashir and Naseer made promises to pay the amounts they owed, but never kept the promises.

14- Sheikh having failed to receive any payments finally filed a Complaint in Cook county Law division in 2017. (17-L-07194).

15- The lawsuit was finally adjudicated in April 2022. The Court granted a judgment in favor of Sheikh and against Bashir for $1,525,000.00 and in favor of Sheikh and against Naseer for $257,000.00 respectively. (Exhibit A).

16- Bashir and Naseer have since absconded and have failed to pay any money towards satisfying the judgments entered against them.

17- During the pendency of the lawsuit, (17-L-07194) and prior to its adjudication, Sheikh learned in 2019 that Bashir and Naseer were trying to sell the 59th Street and 415 Pulaski gas stations as well as some other assets that they had owned in anticipation of any judgment that the Court may enter against them. Sheikh filed a Motion on 5/6/2019, and notified the Court that Bashir and Naseer had fraudulently transferred the gas stations and/or were actively contemplating selling other assets that they owned. (Exhibit F). Sheikh asked the Court to avoid those transfers or issue an order which would prohibit them from disposing off their assets.

18- At the hearings, Fadi Rafati, Counsel of Bashir and Naseer denied that their clients were trying to sell any of the assets and assured the Court that he will advise his clients not to sell anything during the pendency of the lawsuit. Court denied Sheikh's Motion without prejudice (Exhibit F: last page), and stated that the Court will not entertain any Motion to

8

set aside fraudulent transfers or issue any other order to block the sale of Bashir or

Naseer's assets till Sheikh prevails on his lawsuit and is able to secure a judgment in his

favor.

19-    Despite Rafati's representations to the Court that he nor his clients were selling or

contemplating Fraudulent Transfers, in reality Rafati was scouting for buyers for his

clients and

after finding the buyers, cemented multiple deals to sell Bashir and Naseer's assets.

20-    Rafati, also prepared all closing documents including Real Estate Purchase Agreements,

accepting $100,000.00 as escrowee for the 59th Street gas station. Attached are Real

estate agreements and $100,000.00 in Cashier Checks wired by Rafati as down payment

and copies of escrow agreements. (Exhibit G). Likewise Rafati also prepared agreements

to sell the business (not the property) at the 415 Pulaski gas station.

21-    Earlier upon filing the lawsuit in 2017, Sheikh had recorded  lis pendens Notices with the

Cook County Recorder of Deeds against Bashir & Naseer properties. The purpose of

recording the lis pendens was to notify the public of the pending lawsuit in Cook County.

(Exhibit H).

## PRIOR TO FILING THE LAWSUIT,  BASHIR AND   NASEER'S ASSETS, AND

## THEIR MACHINATIONS TO HIDE  OR TRANSFER THEIR ASSETS

22-    At the filing of the lawsuit by Sheikh in Cook County, Bashir and Naseer had

considerable holdings which were conservatively estimated to be around $8,000.000.00

to $10,000,000.00. (Eight to ten million dollars). Some of those assets were disposed off

by Bashir in **Strategic deliberate defaults,** while others were sold off in fire sales to

avoid paying the Plaintiff. From the monies received from those sales, Naseer and Bashir

9

purchased additional assets and businesses which they parked in names of their spouses, children and close family friends. Some of the assets that Bashir and Naseer owned at the signing of the Promissory Notes and at the filing of the lawsuit and during its pendency appear underneath. Plaintiff would like to point out that there may even be more assets out there which are not in this Plaintiff's knowledge and which may get known in due course of time, and in discovery.

**Gas Station at 1224 W. 59th Street, Chicago**

23- Plaintiff Sheikh sold this gas station to Bashir in 2008 for $1,500,000.00. Out of which $1,200,000.00 was financed by Sheikh. Bashir sold 50% shares in the gas station to Jahanzaib and his wife Aslam for $350,000.00, and all three operated the gas station under Loc Gas Inc.,The PIN Numbers of this property are: 20-17-131-018 to 024.

24- Sometime in 2016 Bashir and Aslam decided to go in *strategic deliberate default,* so the gas station could be foreclosed by the Bank. Purpose of this deliberate default was to wipe out all liens on the gas station, including the amounts owed to Sheikh, and then re-purchase the gas station in foreclosure sale, free and clear of all liens.

25- Bashir and Aslam also worked out a deal with the lender Hanmi Bank, prior to the foreclosure, which was negotiated by their attorney Rafati, which assured Hanmi Bank, that once foreclosed, the property will have a ready buyer, namely his client Mohammed Abdallah. Meantime Bashir and Aslam also assured the bank that they will not shut down the gas station during the foreclosure process and will continue to operate it.

26- Rafati negotiated the price of the re-purchase of the property with the lender Hanmi bank and it was agreed between the parties that the Hanmi bank will re-sell the gas station to Rafati's client Abdallah for $700,000.00 after foreclosure.

10

27-    Mohammed Abdallah, Rafati's client was not the end buyer and was merely to act as a proxy, under whose name Rafati arranged to re-purchase the gas station. Since this loan was an SBA loan, their regulations prohibited re-selling the assets back to the original owners who defaulted. As such a third party to act as a proxy was needed to hide the transaction from SBA and Banking regulators.

28-    In 2020 Mohammed Abdallah, as agreed with Rafati working as proxy for this transaction purchased the gas station from the bank for $700,000.00. Abdallah used 59th Property LLC to acquire the title of the gas station.

29-    On the same day Abdallah who had acquired the title under 59th Property, llc., re-sold the gas station back to Aslam and Bashir. In 2020 at its closing the gas station was estimated to be worth at least two million dollars, but Aslam and Bashir managed to buy it back from Abdallah for $1.2 million dollars, which is a 40% discount of its then existing market value.

30-    Aslam and Bashir financed the purchase of the gas station by obtaining a mortgage worth $1,200,000.00 from the Millinium Bank (Exhibit I). Aslam acted as the mortgagor.

31-    All four of them which included Abdallah, Bashir, Aslam and Rafati shared the excess proceeds over $700,000.00 which they had paid Hanmi bank to purchase the gas station in foreclosure and funneled the balance of $500,000.00, the difference between what they paid the Hanmi bank and the $1,200,000.00 loan (Exhibit I: Closing Statement) that they obtained from the Millinium bank back to themselves.

32-    This deliberate strategic foreclosure, in the scheme of things, served two purposes for Aslam and Bashir. One they figured that foreclosure would wipe out all liens, and deprive

11

the Plaintiff from recouping on his debt, and secondly it put additional cash in their pockets estimated to be over $125,000.00 for themselves and for other conspirators.

33-    This Fraudulent transfer in a carefully calibrated deliberate default deprived the Plaintiff of an asset which could have been used to satisfy his debt and was equally useful in going around the lis pendens notices Sheikh had filed against the properties.

34-    The gas station was sold for $700,000.00 whereas its true market value is at least $2,000,000.00. In other words conspirators paid merely 1/3rd of the true value of the property, when the gas station was sold to Abdallah who acted as the proxy.

35-    This fraudulent Transfer made the debtor Bashir insolvent which prevented him from satisfying his debts to the Plaintiff.

36-    This Fraudulent Transfer was made by Bashir with actual intent to defraud the Plaintiff.

37-    As a matter of fact nothing changed either before, during the pendency of the foreclosure proceedings or after foreclosure. Bashir and his partner Aslam retained the business and the possession of the gas station during foreclosure proceedings and continued to retain the control of the gas station after foreclosure by re-purchasing the business in a deliberate strategic default.

38-    The transaction was concealed and different entities and individuals were used by Bashir and Aslam to hide this transaction. Both had substantial help from Accountant Chaus who made additional companies and corporations to hide the transaction. Chaus also deceptively helped Aslam and Bashir to triple the sales of the gas station, which he filed on their behalf with the Illinois department of Revenue and the Internal Revenue Service prior to these individuals applying the loan from the Millinium bank, which helped secure the loan.

12

39-    This transaction was contrived by Bashir and Aslam when a lawsuit was pending in the Cook County law division seeking judgment against Bashir for monies owed to the Plaintiff.

40-    The transfer of the gas station on record was to an insider, a close associate and partner of Bashir.

41-    The transfer of this asset was substantial and comprised a major portion of Bashir's assets.

42-    The value of the consideration received by the debtor Bashir was way lower than the market value of the asset and was not reasonably equivalent to the value of the asset transferred or the amount received for this fabricated transaction.

**Gas Station at 415 South Pulaski Avenue, Chicago:**

43-    Naseer and Bashir owned this gas station at 415 South Pulaski Avenue which they purchased in 2015 for $2,2000,000.00. Fearing the judgment in the pending litigation could be entered against them, Bashir and Naseer sometime in early 2019 tried to sell the property. Since a lis pendens had been placed on the property by Sheikh, the property could not be sold as Banks shied away from writing a loan for a property in litigation. The PIN Number of the property is: 16-14-112-037-0000

44-    To go around this hurdle, Bashir and Naseer decided to sell the business only, (without real property), in which purchasers usually do not search title deficiencies.

45-    Hasan Safiuddin who was an old acquaintance of Bashir was offered the gas station business at a discount. The business alone was worth $800,000.00 but was offered at a steep discount to Safiuddin. Safiuddin purchased the gas station for $450,000.00 in cash.

13

46- The sale of the gas station business was concealed by Bashir and Naseer as the business is still being run under MDDS Inc., a corporation which is owned by Bashir and Naseer, potentially giving them de-facto control of the property.

47- Few months later Bashir and Naseer also went into strategic deliberate default on this property as well and stopped making any mortgage payments to the Bank.

48- During this period, when Chaudry had stopped making mortgage payment to the lender Hinsdale Bank, he was introduced by a friend to One Soufian Abdelkader, who also owns and operates multiple gas stations in and around Chicago. Both Chaudry and Abdelkader concocted a plan, approached the Bank and worked out a 'short sale' arrangement of the gas station in which the bank agreed to sell the Note to Abdelkader for slightly over $000,000.00. (Redacted: Cook County Court Protective Order).

49- Bashir owned another property under Naseer's name at 3635 West Armitage Avenue in Chicago, and both this property and the gas station were on the same loan and with the same lender, (Hinsdale Bank) were purchased by Abdelkader in a so called 'short sale' camouflaged as a 'Note Purchase' for a sum cited earlier for slightly over $000,000.00. (Exhibit J). (Protective Order).

50- The gas station was purchased by Chaudry and Naseer in 2015 for $2,200,000.00. It is estimated that the property now is worth at least $2,500,000.00. As such the gas station which was sold for $000,000.00 in a deliberate and strategic default was sold at a substantial discount compared to its true market value. Sheikh has recently learned that Abdel Kader has turned around and sold his 'Note' to another company known as Congress & Pulaski Real Estate LLC for $500,000.00 over and above what Abdelkader paid Hinsdale Bank. On information and belief, Congress & Pulaski very recently turned

14

around and re-sold the gas station, to Zahdan Ahmad. As of writing of this amended complaint, it is unknown if the gas station was purchased by Zahdan Ahmad on his personal name or a shell company, as Ahmad has yet to record the documents with the Cook County Recorder of deeds. If it turns out that the purchase was made on the name of the Corporation, in that case the Corporation will also be made a defendant in this case.

51- These fraudulent Transfers have made Bashir and Naseer insolvent, making them unable to satisfy the judgments against them.

52- These Fraudulent Transfer were made by Bashir and Naseer with actual intent to defraud the Plaintiff.

53- The transaction was deliberately concealed and different entities, individuals and methods were used by Bashir and Naseer to hide this transaction with the help of their accountant Chaus. Chaus prepared all sales figures of the gas station and invented an additional corporation which he named Awad Inc. to facilitate this transaction.

54- These transaction were contrived by Bashir and Naseer when a lawsuit was pending or a judgment had been entered against them in the Cook County law division.

55- The transfer of the gas station business was made to an old friend and acquaintance of Bashir and Naseer.

56- The transfer of this asset, comprised a major portion of Bashir's assets. Sale of this asset made Naseer and Bashir insolvent and unable to pay the debt and judgment which they owed the Plaintiff.

57- The value of the consideration received by the debtors Bashir and Naseer was way lower than the market value of the assets and was not reasonably equivalent to the market value of the asset transferred or the amount received for this transaction.

15

**Liquor Store at 3635 W. Armitage Avenue, Chicago.**

58-     In 2001 Plaintiff Sheikh sold a liquor store located at 3635 West Armitage Avenue in Chicago to Bashir. The transaction included the real property as well and the sales price was set at $399,000.00 (Exhibit R). Bashir borrowed and assumed a mortgage for $350,000.00 from a local bank. The PIN Number of the property is: 13-35-305-047.

59-     In 2012 Bashir went into a deliberate default on this property and stopped making mortgage payments to the Bank. It left the Bank with a choice to either file foreclosure proceedings in the Court, which would have resulted in substantial legal fees, and eighteen months or more of receiving no payments on its loan or as an alternative, sell the property.

60-     Having cornered the Bank, Bashir pushed the Bank into agreeing to a 'short sale' and repurchased the property in his brother and sister-in-law Naseer's name. Naseer paid the Bank $206,000.00 (Exhibit S). Through this strategic and deliberate default, Bashir shaved off almost $140,000.00 from the price he paid on original mortgage.

61-     Bashir continued to make payments thru his brother and sister in law on the $206,000.00 mortgage at which it had re-purchased the property till the end of 2021 and then went into another deliberate default and stopped making further payments to the Bank on his mortgage.

62-     It was learned recently by Sheikh that few months ago Bashir has transferred the liquor store business to his son Ali. Since Ali is yet to receive his liquor license, he is using the liquor license of his mother Qadir, which Bashir had obtained few years earlier in his wife's name. Bashir's accountant Chaus played a significant part in perpetrating this transaction by creating different entities in an effort to hide the transactions from Sheikh.

16

63-     The total amount Bashir received for concocting this deliberate "short sale" of Armitage
        liquor store and the gas station as outlined above at 415 S. Pulaski Avenue was
        $600,000.00. Apart from pocketing 600,000.00, Bashir also managed to take these
        properties out of reach for Sheikh, which Sheikh could have sold after getting the
        judgment to recoup on his judgment. As noted earlier, Note obtained in short sale by
        Abdelkader from Hinsdale Bank has been re-sold to another company  'Congress &
        Pulaski Real Estate LLC' which is owned by Junaid Ahmed.

         Congress & Pulaski LLC  owns and operates numerous gas stations, and has no history,
        like Abdelkader of purchasing Notes from banks. Recently few weeks ago, Junaid and
        Congress Pulaski have sold the 'Note' to Zahdan Ahmad or to his designated entity,
        whose name is still under wraps, as nothing has been recorded with the Recorder's office
        as of this date. This so called purchasing of "Note" was a back door attempt to purchase
        the gas station and liquor store which these two companies could not have purchased
        because of Sheikh's lis pendens placed on the properties as well as the 'Memorandum of
        Judgment' which was recorded by Sheikh against the properties after the Court in Cook
        County entered the judgment in Sheikh's favor..

64-     The combined value of 3635 Armitage liquor store and 415 S. Pulaski gas station is
        estimated to be around $2,800,000.00, which was sold to Abdelkader in a "short sale" for
        far less than its true market value for a paltry sum of $000,000.00 (Price withheld:
        Protective Order of Cook County Court). **See Note below # 1.**

65-      This fraudulent Transfer made Bashir and Naseer insolvent, making them unable to

         *(1) Price paid for these assets is so low that Abdelkader, before providing documents in
         response to Sheikh's Subpoena insisted that Sheikh sign a non-disclosure agreement.*

to satisfy the judgment.

66- This Fraudulent Transfer was made by Bashir and Naseer with actual intent to defraud the Plaintiff.

67- The transaction was kept hidden and different entities were used by Bashir and Naseer to hide this transaction.

68- This transaction was contrived by Bashir and Naseer when a lawsuit was pending in the Cook County law division seeking judgment against Bashir and Naseer, and/or a judgment had been either entered or was about to be entered by the Court against these individuals.

69- The transfer of the liquor store property was made to an old friend and acquaintance of Bashir and Naseer.

70- The transfer of this asset was substantial and comprised a major portion of Bashir's assets on which the debts owed to the Plaintiff could have been satisfied. This transfer has made Bashir insolvent and unable to satisfy Sheikh's judgment.

71- The value of the consideration received by the debtors Bashir and Naseer, as well as Abdelkader, Congress Pulaski Real Estate Inc., and Zahdan Ahmad for the gas station or the transfer of liquor store by Bashir to his son, believed to have been made for no consideration at all was way lower than the market value of the assets and was not reasonably equivalent to the market value of the asset transferred or the amount received for this transaction. The transfer was made to a his friends and to his son.

Sheikh would also like to point out that Bashir has successfully used the strategic and deliberate defaults on multiple occasions on numerous other properties. Just few of the properties which fell victim to his deliberate and strategic defaults are listed below:

18

-Gas station at 3700 West 111th Street, Chicago.

- Strip Center at 6119-6131 S. Ashland Avenue, Chicago.

-Priceless Groceries, 501 W. Fairchild Road, Danville, Illinois.

-Strip Center at 5049 West Madison, Chicago, Illinois.

**Grocery Store at 951 S. Lewis Avenue, in Waukegan.**

72- In 2015 Bashir and Naseer purchased the grocery store at 951 South Lewis Avenue in Waukegan, Illinois, a far northern municipality situated close to Wisconsin. The property is located in Lake County and bears the PIN Number of 08-29-400-029-0000.

73- Naseer paid $417,000.00 for the real property and another $350,000.00 was paid for the business and fixtures of the property.

74- After the initiation of the lawsuit by the Plaintiff (17 L 07194), and in anticipation of a judgment being entered against Naseer, who had the property title parked under Sandal Inc. transferred the corporation to her sister-in-law, Qadir, who happens to be the wife of the debtor Bashir. Chaus arranged to create new corporation in which Bashir shifted his newly transferred business for the sole purpose of hiding Bashir and Naseer's assets from this Plaintiff.

75- This Fraudulent Transfer has divested Naseer and Bashir of another asset that could have been utilized by the Plaintiff towards executing and partially satisfying his judgment.

76- The grocery store was transferred by Naseer to her sister-in-law Qadir, wife of debtor Bashir for very little or no consideration at all.

77- This fraudulent Transfer has made Naseer and Bashir insolvent, making them unable to satisfy the judgments against them.

19

78- This Fraudulent Transfer was made by Naseer and Bashir with actual intent to defraud the Plaintiff.

79- The transaction was deliberately concealed and different entities and individuals were used by the debtors to hide this transaction.

80- This Fraudulent Transfer was contrived by Naseer and Bashir when a lawsuit was pending in the Cook County law division seeking judgments against Bashir and Naseer.

81- This Fraudulent Transfer of the grocery store was made by Naseer and Bashir to an insider and a close relative of theirs, in this case to Bashir's wife Qadir.

82- The transfer of this asset was substantial and comprised a major portion of debtor's assets.

83- The value of the consideration received by the debtor Naseer and Bashir was insignificant and way lower than the market value of the asset and was not reasonably equivalent to the market value of the asset transferred or the amount received for this transaction.

**Grocery Store at 1401 14th Street, Waukegan.**

84- Being flush with money by concocting multiple 'short sales' and 'strategic deliberate defaults' and holding a sizeable cash, Bashir over the next few months purchased numerous businesses. One of the businesses that Bashir purchased was a grocery store located at 1401 14th Street, in Waukegan, Illinois. Bashir paid over $100,000.00 in cash to purchase this business.

85- In an effort to hide the true ownership of the store, Bashir put the business in his daughter Mahin's name. Bashir also had all business licenses issued in Mahin's name as well.

86-    Bashir also applied for a liquor license in Mahin's name, and had a liquor license issued for the business. The business is fully run, operated and managed by Bashir and his daughter is merely a figurehead, who attended a local college when he purchased the store. Bashir always had been and remains the main beneficiary of all profits and proceeds of this business. Chaus made bogus and dummy companies to hide the ownership of the business.

87-    This fraudulent Transfer of $100,000.00 cash to purchase the business on his daughter's name made Bashir insolvent, making him unable to satisfy the judgments against them.

88-    This Fraudulent Transfer was made by Bashir with actual intent to hide, hinder, delay and defraud the Plaintiff.

89-    The transaction was deliberately concealed and different entities and individuals were used by Bashir to hide this transaction.

90-    This transaction was consumed by Bashir when a lawsuit was pending in the Cook County law division seeking judgment against Bashir for debts he owed the Plaintiff.

91-    The transfer of $100,000.00 cash to Mahin and the purchase of business was made to an insider who happened to be the daughter of the debtor Bashir.

92-    The transfer of this asset was substantial and comprised a major portion of Bashir's assets which made Bashir insolvent and unable to satisfy his debts to the Plaintiff.

**Liquor Store at 4200 West Armitage Avenue, Chicago.**

93-    With so much cash in hand, Bashir also decided to purchase a liquor store located at 4200 West Armitage Avenue in Chicago. For this business Bashir paid One named Aziz over $130,000.00

in cash. The price included business, goodwill and inventory.

94-    As usual fearing a judgment in the lawsuit that was filed by the Plaintiff to recover the sums Bashir owed him, Bashir put the business in Syed Jahantab's name. Jahantab is the son of Mr. Shah Jee, now deceased, who was a close friend of Bashir. The fictitious chain of ownership and the legal entities made to hide the transaction were made by Chaus.

95-    All licenses and leases of this liquor store are in Jahantab or on his entities name, but Bashir remains the true owner and maintains total control over the operation and management of the business. Bashir also remains the beneficiary of the profits and the proceeds of the business.

96-    This fraudulent Transfer of $130,000.00 cash to Jahantab and to purchase the business on his close friend's name made Bashir insolvent, making him unable to satisfy the judgments against him.

97-    This Fraudulent Transfer was made by Bashir with actual intent to hide cash from his creditors, and defraud the Plaintiff.

98-    The transaction was deliberately concealed and different entities and individuals were used by Bashir to hide this transaction.

99-    This Fraudulent Transfer was perpetrated by Bashir when a lawsuit was pending in the Cook   County law division seeking judgment against Bashir for debts he owed the Plaintiff.

100-    The transfer of $130,000.00 cash and the purchase of business was made to an insider who happened to be the son of his close friend Shah Jee.

101-    The transfer of this asset was substantial and comprised a major portion of Bashir's assets. It also made Bashir insolvent and unable to pay his debts to the Plaintiff.

**Liquor Store at 4234 W. Fullerton, Chicago**

22

102-    Apart from investing on Jahantab's name on the 4200 West Armitage business, Bashir
        also invested over $80,000.00 on a business that Jahantab had been operating since 2005.
        This business was run by his father Shah Jee, but upon his death was taken over by
        Jahantab, Shah Jee's son.

103-    Bashir invested this money to upgrade the store, purchase additional inventory as he
        converted  the store to a liquor store, which previously didn't have a liquor license.

104-    This fraudulent Transfer of $80,000.00 in cash to purchase the 50% share in the liquor
        store business with Jahantab made Bashir insolvent, making him unable to satisfy the
        judgments against him.

105-    This Fraudulent Transfer was made by Bashir with actual intent to hide the cash from his
        creditors and defraud the Plaintiff.

106-    The transaction was deliberately concealed and different entities and individuals were
        used by Bashir to hide this transaction.

107-    This transaction was contrived by Bashir when a lawsuit was pending in the Cook
        County law division seeking judgment against Bashir for debts he owed the Plaintiff.

108-    The transfer of $80,000.00 in cash and the purchase of business was made to an insider
        who happened to be the son of his family friend.

109-    The transfer of this asset was substantial and comprised a major portion of Bashir's
        assets.

**Gas Station at 7283-87 South Chicago Avenue, Chicago.**

110-    In 2005 Bashir purchased a gas station located at 7283-87 S. Chicago Avenue in Chicago,
        in which Nusrat Choudhri was his partner. Both financed the purchase thru a loan from
        Allegiance Community bank (Exhibit K). The property consisted of gas station land as

23

well as the business which sold fuels and additives. Both Bashir and Chaudhri managed, owned and operated the gas station. Bashir and Chaudhri are not only related but also close friends.

111-  According to an unverified "transfer document" which is not authenticated, notarized or certified, Choudhri claims that Bashir sold him his 50% share of the land on which the gas station/building was located for a symbolic sum of $10.00 (Exhibit L).

112-  It was learned that the real amount for which Bashir sold his 50% interest in the gas station was $800,000.00, as the total market value of the property 15 years ago was estimated to be $2,000,000.00.. This sum was financed by Bashir over a twenty five year period under which Chaudhri is paying this amount to Bashir in equal monthly installments. Under the agreement and in return, Choudhri relinquished the business operation of the fuel station exclusively to Bashir, whereas the land which included the building and the structure itself was deeded and was to be retained by Chaudhri. After acquiring the business Bashir turned around and sold 50% of the gas station operation to one Shmaila Rafiq for $200,000.00.

The partnership between Bashir and Rafiq is proven by certain documents which filed with the Cook County Recorder of Deeds in 2018 by Gas Depot Inc., which supplies fuel and related additives to the gas stations. Additional documents related to this transaction including a 'Right of First refusal' were also recorded by Byline Bank, signed both by Bashir and Rafiq. These documents gave Gas Depot right of first refusal to either purchase or decline to purchase the gas station property in case the property was ever sold. (Exhibit M). This 'Right of first refusal' document conveys the impression that Bashir may have re-purchased the real estate or partially purchased the real estate back

24

from Chaoudhri, since only an individual having ownership interest in a property can grant the right of first refusal to a third party. Apart from the above, in 2023 in response to a Citation issued to Chaoudhri in supplemental proceedings in Cook County, Chaudhri's filed a detailed response in which he acknowledged that the gas station business indeed is owned by Bashir and Rafiq. (Exhibit N: Pages 3,4).

113-  The gas station (business and building) is estimated in 2024 to have a combined value of over $2,500,000.00 (two million five hundred thousand dollars), whereas the business alone which is owned by Bashir and Rafiq is conservatively estimated to be worth $700,000.00. This gas station is one of the largest gas stations on South Chicago Avenue and co-incidentally one of the busiest.

114-  Choudhri and Bashir are related to each other apart from being close friends. A character letter written by Mahin, Bashir's daughter to U.S. District Court Judge Kennelly asking him to show leniency in sentencing Choudhri after the conclusion of a criminal trial, shows that Choudhri is "like a second father' to Bashir's children. (Exhibit O). Truly a close relationship.

115-  Both Choudhri and Bashir are trying to workout an arrangement in which Rafiq is being pressurized to claim that she has purchased the shares of Bashir and has become the sole owner of the gas station, thus making her liable for facilitating this fraudulent transfer and any financial liability which could be fairly assessed at or over $350,000.00 as being the fair market value of the proceeds that she could have received from Bashir in a fraudulent transfer.

116-  It is believed that Bashir and Chaoudhri are coercing Rafiq to make false statements as Rafiq feels threatened that if she doesn't follow the script, Chaoudhri who owns the

building and is the landlord could cancel Raafiq's month to month lease or take other actions which could force her out of the business, resulting in Rafiq loosing her equity and investments.

117- This fraudulent Transfer of the 50% of the business shares of Bashir, to Rafiq made Bashir insolvent, making him unable to satisfy the judgments against him. Chaus made all corporations and legal entities in whose name Chaoudhri and Bashir could switch their assets back and forth. Chaus created South Chicago Once Inc., in whose name this gas station is being parked by Bashir and Rafiq.

118- This Fraudulent Transfer was made by Bashir to Rafiq with actual intent to hide his assets from his creditors and defraud the Plaintiff.

119- The transaction was deliberately concealed and different entities and individuals were used by Bashir and Rafiq to hide this transaction with active help from Chaus.

120- This transaction was contrived by Bashir when a lawsuit was pending, or a judgment was about to be entered against him in a court of law in Cook County. The transaction was concealed and was meant to hide it from being known to Bashir's creditors including the Plaintiff.

121- The transfer of this asset was substantial and comprised a major portion of Bashir's assets which made Bashir insolvent and unable to pay his creditors.

**Purchase of a luxury Single Family House in Lincolnwood**

122- Having sold the gas station at 415 Pulaski Avenue, the liquor store at 3635 Armitage Avenue and the 59th Street gas station, Bashir was awash and loaded with substantial amounts of cash. Bashir knew that having that much cash after a judgment that had been entered against him, or was to be entered against him in a short order was risky. As such

26

Bashir decided invest this cash in a way that it could not be easily traced. To perpetrate this scheme, Bashir decided to park this cash in real estate and purchased a luxury single family home in Lincolnwood, Illinois.

123- Since Bashir Could not purchase the house under his or his wife's name, he asked Chaus for help. Chaus advised Bashir not to purchase the house under his own name and instead form a brand name LLC, which will be unknown to the Plaintiff Sheikh, and advised him to put the house into the newly minted LLC, which Chaus named Qadir's LLC (Exhibit P).

124- Chaus invented and structured the LLC in a way in which Bashir's two minor children Ali and Rabia were to be the members of the LLC. Since the children were minor and could not manage the LLC, Bashir was to act as a guardian and manage the affairs of the LLC.

125- Chaus knew that the new LLC was being formed to hide and shield the assets of Bashir from the Plaintiff. The purchase of the house was totally handled by Bashir in which Bashir located the house, made an offer to purchase the house, negotiated the sales price, hired Attorney Sheraz Darr for closing, went to the closing of this house and paid $470,000.00 in cash to purchase the house (Exhibit Q). Bashir remains the owner of the house, but to defraud his creditors, Bashir parked the house in the name of the newly minted Qadir's LLC., which shows his minor children Ali and Rabia as being beneficial owners.

126- This transaction was kept hidden by Bashir and perpetrated in complete secrecy.

127- This Fraudulent Transfer was made by Bashir with actual intent to hide the cash from his creditors and defraud the Plaintiff.

128- The transaction was deliberately concealed and different entities and individuals were used by Bashir to hide this transaction. The disposition of almost half a million dollars of cash made Bashir insolvent and unable to pay his debts to the Plaintiff.

129- This transaction was contrived by Bashir when a lawsuit was pending in the Cook County law division seeking judgment against Bashir for debts he owed the Plaintiff or judgment was about to be entered against Bashir.

130- The transfer of $470,000.00 in cash to close relatives, in this instance to his minor children for the sole purpose of purchasing this luxury house in Lincolnwood was made to insiders with the intent to defraud the Creditors including this Plaintiff.

131- The transfer and disposition of $470,000.00 in cash is a substantial sum by any standard and comprised a major portion of Bashir's assets.

132- The disposition of such a large sum of cash has made Bashir insolvent and unable to pay his debts, including the debt of the Plaintiff.

**Bashir invests in an Additional $125,000.00 in a Grocery Store in Wheaton**

133- Plaintiff has just recently unearthed another investment by Bashir in which Bashir has invested over $125,000.00 in cash and purchased a grocery store located at 326 West Liberty Road in Wheaton.

134- In this transaction Bashir paid $125,000.00 cash to a close associate Amjad Chaudry. Both invested and own this business on a 50/50 basis,, but to hide this asset, Chaus invented a brand new corporation he named BCA Investment, which shows Amjad Chaudry as being the sole owner of this business. Debtor Bashir's name is not even on the record.

135- Bashir invested this money with Amjad to hide and conceal his assets and to defraud and

28

deceive the Plaintiff.

136- This disposition of over $125,000.00 in cash has made Bashir insolvent and unable to pay his     debts and liabilities too his creditors including to this Plaintiff.

## CURRENT STATUS

137- Current status of Plaintiff's investigations in this matter are ongoing, and Plaintiff is attempting to reconstruct the universe of Fraudulent Transfers between and amongst the debtors Bashir, Naseer and their relatives and friends. So far Plaintiff has relied on some records filed with the Cook County Recorder of Deeds but true scope and extent of debtors conversions and transfers still remains under wrap. There is a strong possibility that out there are assets which are owned by Bashir and Naseer, are hidden or concealed under layers of corporate or personal machinations. For example the purchase of the luxury estate uncovered just weeks ago by Sheikh was so well concealed by Bashir with help from a professional accountant and CPA Chaus, that to unearth or disentomb this transaction was practically an impossible task.

## CHAUDRY & NASEER CANNOT SATISFY THE JUDGMENTS
## WITH THEIR REMAINING ASSETS

138-  Bashir and Naseer have represented that they have no assets with which to satisfy the Judgments, entered by Court in favor of Sheikh and against them . The house which is owned by Bashir at 6655 N. Monticello Avenue in Lincolnwood and the house owned by Naseer at 3673 West Northshore Avenue in Lincolnwood have multiple judgments listed against them, and those judgments which were placed on their properties before Sheikh's judgment are superior and have priority over the Plaintiff's judgment.

## ILLINOIS FRAUDULENT TRANSFER ACT AFFORDS RELIEF

29

## TO THE PLAINTIFF SHEIKH

139-    **740 ILCS 160/6(A) states:**

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

140-    **740 ILCS 160/5 states in pertinent part:**

(a)    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
  (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
  (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
 (b) In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:
(1) the transfer or obligation was to an insider;
(2) the debtor retained possession or control of the property transferred after the transfer;
 (3) the transfer or obligation was disclosed or concealed;
 (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) the transfer was of substantially all the debtor's assets;
 (6) the debtor absconded;
   (7) the debtor removed or concealed assets;
 (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
   (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
   (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

141-    **740 ILCS 160/8 states in pertinent part:**

 (a) In an action for relief against a transfer or obligation under this Act, a creditor, subject to the limitations in Section 9, may obtain:

(1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure;

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

(A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(C) any other relief the circumstances may require.

(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

## <u>Causes of Action</u>

### Count I: Against Bashir for Avoidance of Actually Fraudulent Transfers

For Count I of its verified Complaint, Sheikh incorporates the allegations contained in the preceding paragraphs 1 through 136 as if part and parcel of this Count, and further states as follows:

142- Bashir perpetrated each of the Fraudulent Transfers as noted above by disposing off gas stations on 59th Street, another gas station at 415 South Pulaski Avenue, liquor store property at 3635 Armitage Avenue, grocery store at 951 S. Lewis Avenue in Waukegan, liquor store at 4200 W. Armitage Avenue, another liquor store at 4234 West Fullerton Avenue, luxury single family house at 7001 North Keeler Avenue in Lincolnwood and transferred them to his family friends, Spouse, son, daughters and other close friends and associates.

143- These Transfers were made with the actual intent to hinder, delay or defraud Plaintiff.

144- These transfers made Bashir insolvent and unable to pay his debts.

145- Transfers were made when Plaintiff had filed or about to be filed, judgment rendered or

31

about to be rendered and Bashir intended to put his assets out of reach for the Plaintiff.

146- The transfers were concealed and were kept a close secret by Bashir.

147- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor

of the Plaintiff and against Bashir, thus:

A. avoiding all the Transfers as itemized above,

B. preserving the avoided Transfers for the benefit of the Plaintiff;

C. awarding Plaintiff a money judgment against Bashir or/and his transferees, for

$1,535,000.00 plus statutory interest from the date of the judgment, and

D. granting all other relief which this Court deems is just and proper in the premises.

**Count II: Against Bashir for Avoidance of Constructively Fraudulent Transfers**

148- For Count II of its Verified Complaint, Plaintiff incorporates the allegations contained in

the preceding paragraphs 1 through 136, and further states as follows:

149- Bashir made each of the Constructively Fraudulent Transfers including 415 Pulaski gas

station, 1224 W. 59th Street, Chicago, 951 S. Lewis Avenue, Waukegan, 4200 W.

Armitage Avenue, Chicago, 3635 W. Armitage Avenue, Chicago and 4234 W. Fullerton

Avenue in Chicago and 7001 North Keeler Avenue in Lincolnwood.

150- Each of the Constructively Fraudulent Transfers was made without the transferor

receiving a reasonably equivalent value in exchange while the transferor was engaged or

was about to engage in a business or transaction for which its remaining assets were

unreasonably small in relation to its business or the transaction.

151- Each of the Constructively Fraudulent Transfers was made without the transferor

receiving a reasonably equivalent value in exchange and the transferor intended to incur,

or reasonably should have believed, that the transferor would incur debts beyond the transferor's ability to pay as the debts became due.

152- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against Bashir thus:

A. avoiding all Constructively Fraudulent Transfers Bashir made as itemized above;

B. preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C. awarding Plaintiff a money judgment against Bashir in the amount of the Constructively Fraudulent Transfers of at least $1,535,000.00 plus post-judgment interest, and costs of the proceedings;

D. and granting all other relief which this Court deems is just and proper in the premises.

**Count III: Against Naseer for Avoidance of Actually Fraudulent Transfers**

For Count III of its Verified Complaint, Sheikh incorporates the allegations contained in the preceding paragraphs 1 through 136 as if part and parcel of this Count, and further states as follows:

153- Naseer perpetrated each of the Fraudulent Transfers as noted above by disposing off gas stations at 415 South Pulaski Avenue, Liquor store at 3635 Armitage Avenue, grocery store at 951 S. Lewis Avenue in Waukegan, and transferred them to her family friends, sister-in-law and other close associates.

154- These Fraudulent Transfers were made with the actual intent to hinder, delay or defraud Plaintiff.

155- These transfers made Naseer insolvent and unable to pay her debts.

156- Transfers were made when Plaintiff had filed or was about to file a lawsuit against Naseer and Naseer intended to put her assets out of reach to the Plaintiff.

33

157- The transfers were concealed and were kept a close secret by Naseer.

158- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff and against Naseer, thus:

A. avoiding all Transfers as itemized above,

B. preserving the avoided Fraudulent Transfers for the benefit of the Plaintiff;

C. awarding Plaintiff a money judgment against Naseer or/and her transferees, for a minimum of $257,000.00 plus post judgment interest, and

D. granting all other relief which this Court deems is just and proper in the premises.

**Count IV: Against Naseer for Avoidance of Constructively Fraudulent Transfers**

159- For Count IV of its Verified Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 136, and further states as follows:

160- Naseer made each of the Constructively Fraudulent Transfers including 415 Pulaski gas station, 3635 W. Armitage Chicago, and 951 Lewis Avenue, Waukegan.

161- Each of the Constructively Fraudulent Transfers was made without the transferor receiving a reasonably equivalent value in exchange while the transferor was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business or the transaction.

162- Each of the Constructively Fraudulent Transfers was made without the transferor receiving a reasonably equivalent value in exchange for what the transferor intended to incur, or reasonably should have believed, that the transferor would incur debts beyond the transferor's ability to pay as the debts became due.

163- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against Naseer, thus:

34

A.      avoiding the Constructively Fraudulent Transfers Naseer made as itemized above,

B.       preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C.      awarding Plaintiff a money judgment against Naseer in the amount of the Constructively Fraudulent Transfers of at least $257,000.00  plus post-judgment interest, and costs of the proceeding;

D.      and granting all other relief which this Court deems is just and proper in the premises.

**Count V: Against Safiuddin for Avoidance of Actually Fraudulent Transfers**

For Count V of its Verified Complaint, Sheikh incorporates the allegations contained in the preceding paragraphs 1 through 136 as if part and parcel of this Count, and further states as follows:

164-    Safiuddin participated in and perpetrated each of the Fraudulent Transfers as noted above by    fraudulently accepting the gas station at 415 South Pulaski Avenue in Chicago,  knowing that he was doing so to make that asset unreachable to the Plaintiff.

165-    The Fraudulent Transfer was made with the actual intent to hinder, delay or defraud Plaintiff.

166-    These transfers made the debtors including the transferor Bashir insolvent and unable to pay the debts he owed. Transfers were made to a close friend of Bashir.

167-    Transfer was made when Plaintiff had filed or was about to file a lawsuit against the debtors and the debtors intended to put their assets out of reach to the Plaintiff.

168-    The transfers were concealed and were kept a close secret by Safiuddin.

169-    **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff and against Safiuddin thus:

A:       avoiding the Fraudulent Transfers,

B.       preserving the avoided Fraudulent Transfers for the benefit of the Plaintiff;

C.       awarding Plaintiff a money judgment against Safiuddin of at least $257,000.00 plus post

         judgment interest and

D.       granting all other relief which this Court deems is just and proper in the premises.

**Count VI: Against Safiuddin for Avoidance of Constructively Fraudulent Transfers**

170-    For Count VI of its verified Complaint, Plaintiff incorporates the allegations contained in

        the preceding paragraphs 1 through 136, and further states as follows:

171-    Safiuddin made each of the Constructively Fraudulent Transfers and transferred an asset

        to his name namely the 415 Pulaski gas station in Chicago.

172-    Each of the Constructively Fraudulent Transfers were made without the transferor

        receiving a reasonably equivalent value in exchange while the transferor was engaged or

        was about to engage in a business or transaction for which its remaining assets were

        unreasonably small in relation to its business or the transaction.

173-    Each of the Constructively Fraudulent Transfers was made without the transferor

        receiving a reasonably equivalent value in exchange and the transferor intended to incur,

        or reasonably should have believed, that the transferor would incur debts beyond the

        transferor's ability to pay as the debts became due.

174-    **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against

        Safiuddin, thus:

A.       avoiding the Constructively Fraudulent Transfers so made;

B.       preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C.       awarding Plaintiff a money judgment against Safiuddin in the amount of the

         Constructively Fraudulent Transfers of a minimum amount of $257,000.00  plus pre-

36

judgment interest, and costs of these proceedings,

D.     and granting all other relief which this Court deems is just and proper in the premises.

**Count VII: Against Junaid Ahmad, Congress Pulaski Real Estate Inc., and Zahdan Ahmad for Avoidance of Actually Fraudulent Transfers**

For Count VII of its Amended Complaint, Sheikh incorporates the allegations contained in the preceding paragraphs 1 through 118 as if part and parcel of this Count, and further states as follows:

175-   Junaid Ahmad and his fully owned Congress & Pulaski RE Inc., and Zahdan Ahmad participated in and perpetrated each of the Fraudulent Transfers as noted above by fraudulently accepting the gas station at 415 South Pulaski Avenue in Chicago, as well as liquor store located at 3635 W. Armitage Avenue, in Chicago, knowing that he was doing so to make that asset unreachable to the Plaintiff. Purchase was disguised as purchasing the Note on which Bashir deliberately defaulted.

176-   The Fraudulent Transfer was made with the actual intent to hinder, delay or defraud the Plaintiff.

177-   These transfers made the debtors including the transferor Bashir insolvent and unable to pay the debts he owed, and transfers were made to a close friend or associate, and was made at prices way lower at what those assets would have been sold in the open market.

178-   Transfer was made when Plaintiff had filed or was about to file a lawsuit against the debtors and the debtors intended to put their assets out of reach to the Plaintiff.

179-   The transfers were concealed and were kept a close secret by Junaid and Zahdan along wih their corporate entities of Congress Pulaski Real Estate.

180-   **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff

and against Junaid Ahmad, Zahdan Ahmad and Congress & Pulaski RE Inc., and against still unknown corporate entity that Zahdan Ahmad used to conceal this transaction, thus:

A.     avoiding the Fraudulent Transfers,

B.     preserving the avoided Fraudulent Transfers for the benefit of the Plaintiff;

C.     awarding Plaintiff a money judgment against Junaid Ahmad, Zahdan Ahmad and against Congress & Pulaski Real Estate for a minimum of $1535,000.00 plus post judgment interest,

D.     granting all other relief which this Court deems is just and proper in the premises.

**Count VIII: Against Zahdan Ahmad, Junaid Ahmad and Congress & Pulaski for Avoidance of Constructively Fraudulent Transfers**

181-     For Count VIII of its verified Amended Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 136, and further states as follows:

182-     Zahdan Ahmad, Junaid Ahmad and Congress & Pulaski Inc., made each of the Constructively Fraudulent Transfers which included the 415 Pulaski gas station as well as the Liquor store at 3635 W. Armitage Avenue in Chicago.

183-     Each of the Constructively Fraudulent Transfers were made without the transferor receiving a reasonably equivalent value in exchange while the transferor was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business or the transaction.

184-     Each of the Constructively Fraudulent Transfers was made without the transferor receiving a reasonably equivalent value in exchange and the transferor intended to incur, or reasonably should have believed, that the transferor would incur debts beyond the transferor's ability to pay as the debts became due. Transfer was disguised as a Note

38

purchase.

185-  **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against

Junaid Ahmad and his wholly owned Congress & Pulaski RE Inc., as well as Zahdan

Ahmad thus:

A.     avoiding the Constructively Fraudulent Transfers so made;

B.     preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C.     awarding Plaintiff a money judgment against Junaid Ahmad, Zahdan Ahmad and

Congress Pulaski Real Estate in the amount of the Constructively Fraudulent Transfers of

at least $1535,000.00 plus pre-judgment interest, and costs of the proceeding;

D.     and granting all other relief which this Court deems is just and proper in the premises.

**Count IX: Against  Jahantab for Avoidance of Actually Fraudulent Transfers of**

**liquor stores at 4200 West Armitage Avenue & liquor store at 4234 W. Fullerton**

**Avenue.**

For Count IX of its verified amended Complaint, Sheikh incorporates the allegations

contained in the preceding paragraphs 1 through 136 as if part and parcel of this Count,

and further states as follows:

186-   Jahantab participated in and perpetrated each of the Fraudulent Transfers as noted above

by fraudulently accepting the liquor stores located at 4200 West Armitage Avenue in

Chicago, and an additional liquor store located at 4234 West Fullerton Avenue in

Chicago, knowing that he was doing so to make that asset unreachable to the Plaintiff.

187-    The Fraudulent Transfer was made with the actual intent to hinder, delay or defraud

Plaintiff and were made to Jahantab, who is the son of Bashir's close friend Shahjee.

188-    These transfers made the debtors including the transferor Bashir insolvent and unable to

pay the debts he owed.

189- Transfer was made when Plaintiff had filed or was about to file a lawsuit against the debtors and the debtors intended to put their assets out of reach to the Plaintiff.

190- The transfers were concealed and were kept a close secret by Jahantab,

191- Jahantab acted as a proxy whereas Bashir controlled the businesses,

192- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff and against Jahantab thus:

A.      avoiding the Fraudulent Transfers of the liquor/grocery store located at 4200 West Armitage Avenue, and another liquor store at 4234 W. Fullerton Avenue, in Chicago.

B.      preserving the avoided Fraudulent Transfers for the benefit of the Plaintiff;

C.      awarding Plaintiff a money judgment against Jahantab of $1535,000.00 plus interest,

D.      granting all other relief which this Court deems is just and proper in the premises.

**Count X: Against Jahantab for Avoidance of Constructively Fraudulent Transfers for Liquor stores at 4200 W. Armitage & 4234 W. Fullerton, Chicago.**

193- For Count X of its verified Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 136, and further states as follows:

194- Jahantab made each of the Constructively Fraudulent Transfer of the Liquor/grocery store located at 4200 West Armitage Avenue in Chicago, and another liquor store at 4234 W. Fullerton Avenue, Chicago.

195- Each of the Constructively Fraudulent Transfers were made without the transferor receiving a reasonably equivalent value in exchange while the transferor was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business or the transaction.

196-    Each of the Constructively Fraudulent Transfer was made without the transferor
        receiving a reasonably equivalent value in exchange and the transferor intended to incur,
        or reasonably should have believed, that the transferor would incur debts beyond the
        transferor's ability to pay as the debts became due. Transfers were made to the son of a
        close friend.

197-    **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against
        Jahantab, thus:

A:      avoiding the Constructively Fraudulent Transfers so made of the liquor store located at
        4200 West Armitage Avenue and another located at 4234 W. Fullerton in Chicago.

B.      preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C.      awarding Plaintiff a money judgment against Jahantab, in the amount of the
        Constructively  Fraudulent Transfers of at least $1535,000.00 plus pre-judgment interest,
        and costs of the proceeding;

D.      and granting all other relief which this Court deems is just and proper in the premises.

        **Count XI: Against Rafiq for Avoidance of Actually Fraudulent Transfers**

        For Count XI of its verified Complaint, Sheikh incorporates the allegations contained in
        the preceding paragraphs 1 through 136 as if part and parcel of this Count, and further
        states as follows:

198-    Rafiq perpetrated each of the fraudulent transfers as identified herein this complaint by
        trying to conceal the ownership of the gas station located at 7283-87 S. Chicago Avenue.

199-    These Transfers were made with the actual intent to hinder, delay or defraud Plaintiff.

200-    These transfers made Bashir insolvent and unable to pay his debts.

201-    Transfers were made when Plaintiff had filed or was about to file a lawsuit against him, or a judgment was soon to be entered against Bashir. The main goal and purpose of Rafiq was to put his or Bashir's assets out of reach to the Plaintiff.

202-    The transfers were contemplated and concealed and were kept a close secret by Rafiq.

203-    **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff and against Rafiq, thus:

A.    avoiding all fraudulent Transfers as itemized above.

B.    preserving the avoided Transfers for the benefit of the Plaintiff;

C.    awarding Plaintiff a money judgment against Rafiq for $1,535,000.00 plus interest,

D.    granting all other relief which this Court deems is just and proper in the premises.

**Count XII: Against Rafiq for Avoidance of Constructively Fraudulent Transfers**

204-    For Count XII of its verified Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 136, and further states as follows:

205-    Rafiq participated and engaged in making each of the Constructively Fraudulent Transfers identified herein above.

206-    Each of the Constructively Fraudulent Transfers was made without the transferor receiving a reasonably equivalent value in exchange while the transferor was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business or the transaction.

207-    Each of the Constructively Fraudulent Transfers was made without the transferor receiving a reasonably equivalent value in exchange and the transferor intended to incur, or reasonably should have believed, that the transferor would incur debts beyond the transferor's ability to pay as the debts became due.

42

208-    **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against
        Rafiq by:

A.      avoiding all Constructively Fraudulent Transfers Rafiq made as itemized above;

B.      preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C.      awarding Plaintiff a money judgment against Rafiq in the amount of the Constructively
        Fraudulent Transfers and a minimum of $1535,000.00 plus pre-judgment interest, and
        costs of these proceeding;

D.      and granting all other relief which this Court deems is just and proper in the premises.

        **Count XIII: Against Qadir's LLC, Ali and Rabia for Avoidance of Actually
        Fraudulent Transfers of the Luxury House at 7001 N. Keeler, Lincolnwood.**

        For Count XIII of its verified Amended Complaint, Sheikh incorporates the allegations
        contained in the preceding paragraphs 1 through 136 as if part and parcel of this Count,
        and further states as follows:

209-    Ali, Rabia and Qadir's LLC participated in and perpetrated each of the Fraudulent
        Transfers as noted above by accepting $470,000.00 in cash and investing that money to
        purchase the luxury house in Lincolnwood, Illinois, knowing that this activity was
        fraudulent and money being transferred by Bashir to his minor children Ali and daughter
        Rabia and newly minted LLC by Chaus was an attempt to fraudulently transfer their
        assets, and in doing so was to make that asset unreachable to the Plaintiff.

210-    Fraudulent Transfer was made with the actual intent to hinder, delay or defraud
        Plaintiff.

211-    These transfers made the debtors including the transferor Bashir insolvent and unable to
        pay the debts he owed.

212-     Transfer was made when Plaintiff had filed a lawsuit against Bashir and a Court decision was expected or had been entered against the debtors and the debtors intended to put their assets out of reach to the Plaintiff.

213-     The transfers were concealed and were kept a close secret by Bashir, Chaus, Ali, Rabia and the limited liability Company newly minted for this fraudulent purpose,

214-     Ali, Rabi and Qadir's LLC acted as a proxy of Bashir whereas Bashir controls his minor children and the Qadir's LLC.,

215-     **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff and against Ali, Rabia and Qadir's LLC by:

A. avoiding the Fraudulent Transfer of the single family luxury house located at 7001 North Keeler Avenue in Lincolnwood, Illinois.

B. preserving the avoided Fraudulent Transfers for the benefit of the Plaintiff;

B. awarding Plaintiff a money judgment against Ali, Rabia and Qadir's LLC., of at least $1,535,000.00 plus post judgment interest and,

C.     granting all other relief which this Court deems is just and proper in the premises.

**Count XIV: Against Rabia, Ali and Qadir's LLC for Avoidance of Constructively Fraudulent Transfers**

216-     For Count XIV of its verified Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 136, and further states as follows:

217-     Qadir's LLC, Bashir's minor children Ali and Rabia made each of the Constructively Fraudulent Transfer of receiving $470,000.00 in cash and for the purpose of hiding, purchased a single family house in Lincolnwood, Illinois.

218-     The Constructively Fraudulent Transfer of cash and purchasing the house were made

without the transferor receiving a reasonably equivalent value in exchange while the transferor was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business or the transaction.

219- Each of the Constructively Fraudulent Transfer was made without the transferor receiving a reasonably equivalent value in exchange and the transferor intended to incur, or reasonably should have believed, that the transferor would incur debts beyond the transferor's ability to pay as the debts became due. Transfers were made by debtor to his children.

220- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against Qadir's LLC, and Bashir's Ali and Rabia, thus:

A. avoiding the Constructively Fraudulent Transfers of making $470,000.00 in cash to purchase the house at 7001 North Keeler Avenue, in Lincolnwood, Illinois.

B. preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C. awarding Plaintiff a money judgment against Qadir's LLC, Ali and Rabia, in the full amount of the Constructively Fraudulent Transfers of $470,000.00 plus pre-judgment interest, and costs of the proceedings;

D. and granting all other relief which this Court deems is just and proper in the premises.

**Count XV: Against Chaus dba Yakub Chaus & Co., for aiding and abetting Fraudulent and Constructive Transfers**

221- For Count XXII Plaintiff reincorporates the allegations contained in the preceding paragraphs 1 to 136 and states further:

222- Chaus dba Yakub Chaus & Co., made, invented, concocted and resurrected dozens of corporations and limited liability companies for Bashir and Naseer.

223- While inventing those entities Chaus knew or would have every reason to know that the purpose of making these companies for Bashir, Naseer, Qadir, Mahin, Ali, Rabia, Jahantab, Rafiq and Aslam was not for legitimate legal or professional purposes.

224- Chaus made these entities for the sole purpose of helping Bashir, Aslam, Naseer and Rafiq to hide their assets with the active intent, knowledge and complete complicity of deceiving and defrauding the Plaintiff by streamlining the fraudulent transfers into different entities, corporations and limited liability companies and giving the scheme a legal cover.

225- Restatement (Second) of Torts § 876 is determinative as Chaus, Bashir and Naseer's actions were concerted and established a legal relationship between a tort feasor who acted in concert with his clients.

226- Additionally Chaus (a) committed a tortious act in concert with Bashir and Naseer and their designated proxies pursuant to a common design, or (b) knew that his clients conduct constituted a breach of duty and gave substantial assistance or encouragement to Bashir and Naseer as to their fraudulent transfers, or (c) gave substantial assistance to the debtors in accomplishing a tortious result after establishing a legal relationship with the tortfeasors.

227- That by virtue of this relationship, Chaus dba Yakub Chaus & Co., provided substantial assistance and encouragement and established a joint enterprise and a mutual agency and provided substantial assistance to Bashir and Naseer to sell their assets to their relatives, their children and their spouses in shell corporations and companies with the actual knowledge and actual intent to deprive the Plaintiff of the fruits of his judgment that was entered by a competent court of law in Cook County, Illinois.

228- Chaus's conduct as an accountant and a CPA was not restricted by failing to act or advise Bashir and Naseer not to violate the Fraudulent Transfer Act, but in reality assisted Bashir and Naseer to violate Fraudulent Transfer Act so they could dispose off their properties before court could enter a judgment that would enable the Plaintiff to execute the judgment against those properties that Chaus helped hide, conceal and disperse.

229- Liability under §§ 876 (b) and (c)2 (Re-statement of torts) "is not based on common design or agreement, but on substantial assistance." Chaus did not merely fail to act, but rather assisted Bashir and Naseer in circumventing and violating laws.

230- Chaus actively participated and helped in perpetrating each of the Fraudulent Transfers as noted above by actively aiding and abetting their transfers.

231- Chaus knew his help to Bashir and Naseer was meant with an actual intent to hinder, delay or defraud Plaintiff.

232- Chaus knew that his providing assistance to Bashir and Naseer to sell and transfer their assets will make both Bashir and Naseer insolvent and unable to pay the debts they owed the Plaintiff.

233- Chaus knew that he was assisting the fraudulent transfers as a lawsuit against Bashir and Naseer was pending and a judgment against these individuals was imminent. Chaus not only had constructive notice of the issues in the case but had actual knowledge of the underlying issues, as Chaus was the accountant of record for Bashir and Naseer throughout the trial at the Cook County.

234- **WHEREFORE**, Plaintiff prays that this Court enter a judgment in his favor and against Chaus and Yakub Chaus & Company.

A.  It is also prayed that the Court also spread the full amount of Judgments against Chaus and Yakub Chaus & Company that the Court entered in the prior litigation (17-L-07194) against Chadury and Naseer for $1,535,0000.00 and $257,000.00 respectively.

B.  Grant any other relief which is just and proper in the premises.

**COUNT XVI Against Choudhri, Rafiq & Chaus for engaging in Civil Conspiracy to commit fraud and help Bashir to defeat judgment**

Plaintiff reincorporates the allegations in the preceding paragraphs 1-136 and states further:

Defendants Chaudhri, Chaus and Rafiq knowingly and voluntarily participated in a common scheme with Bashir and Naseer to commit an unlawful act to assist both debtors in delaying, hindering or defrauding the Plaintiff.

235- Defendants Choudhri, Chaus and Rafiq understood the general objectives of the debtor Bashir and Naseer's conspiratorial schemes, accepted them, and agreed implicitly to do their part to further those objectives.

236- As set forth in details above, Defendants Chaudhri, Chaus and Rafiq entered into an agreement for the purpose of accomplishing, by concerted action, the unlawful purpose of hiding, transferring or otherwise shielding Bashir and Naseer's assets in violation of the Citation Liens that prohibited the debtors from transferring their assets, and otherwise in derogation of the rights of the Plaintiff, as part of the scheme to delay, hinder or defraud Bashir and Naseer's judgment creditors.

237- The course of conduct set forth above constitutes a civil conspiracy to commit fraud on Bashir and Naseer's judgment creditor which proximately caused harm and damage to the Plaintiff as debtor's assets were fraudulently transferred.

48

238- Accordingly, Defendants Choudhri, Chaus and Rafiq are jointly and severally liable to Plaintiff for the harm and damage caused by their civil conspiracy with debtor Bashir and Naseer in the fraud committed on the Plaintiff.

**WHEREFORE** Plaintiff prays that the Court enter a judgment against Choudhri, Chaus and Rafiq for the full amount of judgment that was entered against Bashir and Naseer for $1,535,910 and $257,000.00 respectively plus all post judgment interest and spread them against the above named defendants.

**Count XVII against Choudhri, Chaus and Rafiq for aiding and abetting Fraud and Fraudulent Transfers made by Bashir and Naseer to avoid judgment**

Plaintiff re-incorporates the allegations described above in the complaint and further states as under:

239- As set forth in detail above, Bashir and Naseer engaged in numerous schemes to fraudulently transfer their assets in an effort to delay, hinder or defraud his creditors, which injured the ability of the judgment creditors to collect on the amount of indebtedness owed to them by Bashir and Naseer.

240- Defendants Choudhri, Chaus and Rafiq were aware of their roles in judgment debtor Bashir and Naseer's fraudulent transfer schemes when they provided assistance to these individuals in the accomplishment of those schemes;

241- Defendants Choudhri, Chaus and Naseer provided knowing and substantial assistance to Bashir and Naseer in the implementation and execution of judgment debtors fraudulent transfer schemes.

242- Accordingly, Defendants knowingly induced, participated and assisted in actively defrauding Bashir and Naseer's judgment creditor Sheikh through the implementation

and execution of Bashir and Naseer's fraudulent transfer schemes in order to assist debtors in their efforts to delay, hinder or defraud his creditors.

243- Defendants Choudhri, Chaus and Rafiq knew that after the assets of the debtors Bashir and Naseer are transferred, the debtors will become insolvent and their remaining assets will not be able to payoff the judgment that was entered in favor of the Plaintiff Sheikh.

244- The course of conduct set forth above constitutes aiding and abetting a fraud on the Plaintiff, which proximately caused harm and damage to Plaintiff Sheikh in the amount of debtors assets that were fraudulently transferred. Accordingly, Defendants Choudhri, Chaus and Rafiq are jointly and severally liable to Plaintiff for the harm and damage caused by their aiding and abetting Bashir and Rafiq in the fraud committed upon Sheikh by selling, shifting or transferring assets which could have been utilized by Sheikh to recoup on a judgment entered by the Court.

245- **WHEREFORE** Plaintiff prays that the Court enter a judgment against Choudhri, Chaus and Rafiq for the full amount of judgment that was entered against Bashir and Naseer for $1,535,910 and $257,000.00 respectively and spread them against the above named defendants.

Any other relief that this Court deems is just and equitable.

**Count XVIII: Against Amjad Chaudry & BCA for Avoidance of Actually Fraudulent Transfer**

For Count XVIII of its verified Complaint, Sheikh incorporates the allegations contained in the preceding paragraphs 1 through 136 as if part and parcel of this Count, and further states as follows:

Amjad Chaudry received $120,000.00 from debtor Bashir and both acquired a

grocery/liquor store in Wheeling. Under the arrangement worked out between Bashir and Arshad, the business will remain under the name of Amjad, but profits will be split equally between both principals.

246- This Fraudulent Transfer was made with the actual intent to hinder, delay or defraud Plaintiff.

247- These transfers made the debtors including the transferor Bashir insolvent and unable to pay the debts he owed.

248- Transfer was made when Plaintiff had filed a lawsuit against Bashir and a Court decision was expected or had been entered against the debtors and the debtors intended to put their assets out of reach to the Plaintiff.

249- The transfers were concealed and were kept a close secret by Bashir, and Arshad. All documents for the corporation were prepared by Chaus, who created a brand new corporation for such purpose.

250- Business is under Amjad's name whereas Bashir controls the business.

251- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff and against Bashir, BCA and Amjad thus:

A. avoiding the Fraudulent Transfer of this liquor and grocery store.

B. preserving the avoided Fraudulent Transfers for the benefit of the Plaintiff;

C. awarding Plaintiff a money judgment against Arshad and Bashir for $120,000.00, and

D. granting all other relief which this Court deems is just and proper in the premises.

**Count XIX: Against Amjad & BCA for Avoidance of Constructively Fraudulent Transfers**

252- For Count XIX of its verified Complaint, Plaintiff incorporates the allegations contained

51

in the preceding paragraphs 1 through 136, and further states as follows.

253-    Bashir invested upwards of $120,000.00 to purchase the liquor grocery store and Arshad
was instrumental in helping him set up this business. Both secured the help of Chaus in
organizing the corporate set up under which both concealed the ownership of the
business.

254-    The Constructively Fraudulent Transferring cash by Bashir to Arshad and purchasing the
liquor store was made without the transferor receiving a reasonably equivalent value in
exchange while the transferor was engaged or was about to engage in a business or
transaction for which its remaining assets were unreasonably small in relation to its
business or the transaction.

255-    Each of the Constructively Fraudulent Transfer was made without the transferor
receiving a reasonably equivalent value in exchange and the transferor intended to incur,
or reasonably should have believed, that the transferor would incur debts beyond the
transferor's ability to pay as the debts became due. Transfers were made to an old friend
Amjad.

256-    **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against
Amjad, BCA and Bashir and thus:

A.    avoiding the Constructively Fraudulent Transfers of making $120,000.00 in cash to
purchase the Grocery store at 326 West Liberty Street in Wheaton, Illinois.

B.    preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C.    awarding Plaintiff a money judgment against Amjad & BCA in the full amount of the
Constructively Fraudulent Transfers or a minimum of $120,000.00, plus pre-judgment
interest, and costs of the

proceedings, proceedings,

D:     and granting all other relief which this Court deems is just and proper in the premises.

257-   It is also prayed that the Judgments in the full amount of $1,535,000.00 and for

$257,000.00 for fraudulent transfers be spread against any designated entity in whose

name Zahdan Ahmad transfers the title to the 415 S. Pulaski and 3635 W. Armitage

Avenue properties.


*/ S / Zafar Sheikh*
Zafar Sheikh
4619 Herzog Street
Austin. TX. 78723.
(847) 414-9670
Zafarsheikh313@aol.com

## <u>V E R I F I C A T I O N</u>

I, Zafar Sheikh, the Plaintiff in this case do hereby certify under oath and under the penalty of perjury and in accordance with the laws of the United States that I have read the attached complaint and further that the foregoing allegations, events and circumstances described herein this complaint are true and correct to the best of my knowledge and belief. (28 U.S. Code § 1746).


/ S / *Zafar Sheikh*                                                          February 1, 2024.

54