

RECEIVED CVK
11/10/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Zafar Sheikh | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Case No. 1:24-cv-00658 |
| | ) | |
| Bashir Chaudry, Bushra Naseer, Junaid | ) | |
| Ahmad, Ali Chaudry, Rabia Chaudry, | ) | Hon. Judge Martha Pacold |
| Shamaila Rafiq, Amjad Chaudry | ) | |
| Syed Jahantab, South Chicago One Inc. | ) | Magistrate Judge |
| | ) | Mclaughlin |
| BCA Investments Inc., Congress & Pulaski | ) | |
| Real Estate LLC., Ahmed Yehdhih, Pulaski | ) | |
| | ) | |
| Fuel Inc., | ) | |

## THIRD  VERIFIED AMENDED COMPLAINT   FOR
## FRAUDULET TRANSFERS   &    CIVIL CONSPIRACY

**NOW COMES THE PLAINTIFF ZAFAR SHEIKH and Complains of the Defendants as Follows:**

### FACTUAL   BACKGROUND

1.  Plaintiff Sheikh, Bashir Chaudry (Chaudry) and Naseer had been involved in different business ventures going back over twenty years. Chaudry and Naseer had borrowed and owed this Plaintiff substantial sums of money, against which both entered and signed Promissory Notes to pay the Plaintiff in full at a certain time. Both defaulted on their obligations and after making numerous promises and defaulting each time on their

commitments and promises, prompted the Plaintiff to file a lawsuit against Chaudry and Naseer in Cook County Circuit Court (17-L-07194). Case went on for some time, and in April 2022 the Court ruled in favor of the Plaintiff, granting judgements against Chaudry for over $1,535,000.00 and against Naseer for over $257,000.00.

2-      While the case against Bashir and Naseer was being prosecuted in State Court, both schemed with their attorneys, accountants and close friends and transferred their assets in derogation of the rights of the Plaintiff and in violation of the state court directives. This is an action to void the debtors fraudulent transfers pursuant to the provisions of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 et seq. (the "IUFTA"), and to recover damages from those who conspired with Bashir and Naseer in designing, implementing and executing their fraudulent transfer schemes.

3-      Debtors Chaudry and Naseer who owned and controlled assets of well over $10,000,000.00 (Ten Million dollars) with the knowledge and substantial assistance of a number of Defendants named herein have sold and fraudulently transferred their assets. Both selectively transferred their assets worth millions of dollars to their children, including some minor children, friends, and relatives. On some of the other assets, Chaudry and Naseer deliberately defaulted and arranged short sales of the assets after receiving substantial payoffs from the purchasers, in violations of IUFTA.

## **V E N U E**

4-       Venue is proper as this action is brought under 28 U.S.C. §1332 as this Court has diversity jurisdiction because (a) this action is between citizens of different States with the amount in controversy exceeding $75,000.

In addition Venue is also appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2),

because a substantial portion of the events giving rise to the claims asserted herein occurred in this Judicial District.

**P A R T I E S**

5-    **Plaintiff**

Plaintiff Zafar Sheikh is a citizen of the State of Texas, who had lived in Illinois, prior to seeking retirement in Texas. Plaintiff while conducting business in Illinois had met the debtors and entered into different contracts, business transactions and promissory notes on which the debtors reneged and defaulted.

6-    **Defendants**

**Bashir Chaudry aka Chaudry Bashir: (Bashir)**

Bashir Chaudry is a resident of Lincolnwood, Illinois, against whom a Court in Cook County, in April 2022 granted judgment in favor of the Plaintiff and against Chaudry for $1, 535,000.00. (Exhibit A). Chaudry refuses to pay and satisfy the judgements and has absconded.

**Bushra Naseer: (Naseer)**

Bushra Naseer is the sister in law of Chaudry and wife of his brother, and resides in Lincolnwood, Illinois. A Court in law division of the Cook County granted a judgment in favor of the Plaintiff Sheikh and against Naseer for $257,000.00 in April 2022. (Exhibit A).

 **Ali Chaudry: Ali**

Ali is son of Bashir and lives with his parents in Lincolnwood, Illinois. Chaudry has assigned and transferred businesses and numerous other assets to Ali's name.

**Rabia Chaudry: Rabia**

Rabia is daughter of Bashir and lives with her parents in Lincolnwood, Illinois. Bashir Chaudry, has transferred assets in Rabia's name.

**Junaid Ahmed (Ahmad)**

Ahmad is a resident of Cook County, owns Congress & Pulaski Real Estate Inc. Ahmad owns numerous gas stations and has purchased the Gas station Bank Note from one Abdelkader, after Chaudry deliberately defaulted on the Bank loan and Mortgage.

**Congress & Pulaski Real Estate Inc., (Congress & Pulaski)**

Congress & Pulaski Real Estate Inc., is an Illinois corporation which is owned by Ahmad, does most of it's business in Illinois, and in whose name Ahmad has purchased the Gas Station Note from one AbdelKader.

**Shamaila Rafiq: (Rafiq)**

Rafiq is a resident of Downers Grove, Illinois, and is 50% owner with Chaudry Bashir in a certain gas station located at 7283 South Chicago Avenue in Chicago. The business is run under the corporate name of South Chicago One Inc.

**South Chicago One Inc.,**

South Chicago One Inc., (South Chicago) is an Illinois corporation which does most of its business in Illinois. South Chicago is jointly owned by debtor Chaudry and Shamaila Rafiq. Gas station at 7283 South Chicago Avenue, Chicago is owned and run under this corporate entity.

**Syed Jahantab (Syed)**

Syed is a resident of Morton Grove, Illinois, and is son of Bashir's friend Sha Jee. Jahantab is a business partner of Chaudry, who has transferred at least two liquor stores in Jahantab's name.

**Ahmed Yehdhih**

Yehdhih is believed to be a resident of the City of Chicago, Illinois. Chaudry sold him the business located at 415 S. Pulaski Avenue, in Chicago. Business is operated under the Pulaski Fuel In., with brand name of Citgo gas station and has

**Pulaski Fuel Inc.,**

Pulaski Fuel Inc., is a wholly owned corporation of Ahmed Yehdhih, is registered in the State of Illinois, and the gas station at 415 S. Pulaski is owned by the said corporation.

**Amjad Chaudry (Amjad)**

Amjad Chaudry is a partner of Bashir Chaudry and is a resident of Cook County. Bashir Chaudry has parked a recently acquired liquor store located in Wheaton, Illinois in Amjad's name.

**BCA INVESTMENTS (BCA)**

BCA is an Illinois corporation, and does most of its business in the State of Illinois. Chaudry Bashir and defendant Amjad run the liquor store in Wheaton under BCA Inc.,

**QADIR'S LLC (QADIR'S)**

Qadir's LLC is a limited liability Company. It has two members, both of whom are Bashir Chaudry's minor children, namely Ali and Rabia Chaudry. Debtor Chaudry purchased a single family house in Lincolnwood, Illinois, in Qadir's LLC's name.

## <u>B A C K G R O U N D</u>

7-    In April 2008 Plaintiff Zafar Sheikh (Sheikh) sold a gas station to Chaudry Bashir located at 1224 West 59th Street in Chicago. (59th Street gas station). The price of the gas station was set at $1,500,000.00, out of which $300,000.00 was credited to Bashir

Chadury to undergo some improvements and the balance $1,200,000.00 was financed by Sheikh. Bashir signed a Note and a mortgage for this amount (Exhibit B).

8- Few years later, in early 2012 Bashir was able to refinance and obtain a loan from Hanmi bank for $775,000.00 which he paid Sheikh towards the $1,200,000.00 note. That still left a balance of over $425,000.00 payable to Sheikh by Chaudry Bashir.

9- Other than that Sheikh had advanced an additional $100,000.00 to Bashir to help purchase the inventory of the gas station, and also made few other cash advances to Bashir for numerous equipment purchases at the gas station, totaling over $195,000.00. (Exhibit C).

After getting partial payments in 2012 of $775,000.00 towards the purchase of the gas station, both Chaudry and Plaintiff Sheikh finalized the accounting for the balance owed to Sheikh by Bashir Chaudry. The balance as per this accounting amounted to $650,000.00. Debtor Bashir Chaudry signed a Promissory Note in favor of Sheikh to pay this sum by 2014 (Exhibit D).

10- In early February 2012, Bashir sold 50% share in the 59th Street gas station to one named Aslam. Aslam was notified by Plaintiff Sheikh upon purchasing the gas station that Bashir owed Sheikh a balance of $650,000.00 and that Bashir had signed a Promissory Note to pay Sheikh all amounts still owed on the gas station by 2014. Aslam promised to make sure that those sums were paid to Sheikh on time, so the Gas Station could be owned and run free and clear of all liens.

11- Apart from the $650,000.00, as mentioned above, Bashir and his sister in law Naseer obtained another $200,000.00 from Sheikh and promised to pay that sum upon the sale of the gas station both owned at 415 South Pulaski Avenue in Chicago. (Exhibit E).

## CHAUDRY & NASEEER'S DEFAULT PROMPTED A LAWSUIT
## AGAINST THE BORROWERS

12-   Debtor Bashir Chaudry defaulted on his obligations to pay Sheikh  by 2014 as agreed in the Promissory Note, causing a default on his obligations under the Note. Pulaski gas station was also sold by Chaudry Bashir and Naseer and despite its sale failed to pay monies owed to Sheikh, as spelled in the Promissory Note. Both debtors Bashir Chaudry and Naseer had violated the terms of their Notes and were in default on making payments on over $850,000.00 in loans.

13-   Sheikh made numerous attempts to collect and both debtors Chaudry and Naseer made promises to pay the amounts they owed, but never kept the promises.

14-   Sheikh having failed to receive any payments finally filed a Complaint in Cook county Law division in 2017. (17-L-07194).

15-   The lawsuit was finally adjudicated in April 2022. Court granted a judgment in favor of Sheikh and against Bashir Chaudry for $1,525,000.00 and in favor of Sheikh and against Naseer for $257,000.00 respectively. (Exhibit A).

16-   Despite consistent solicitations of the Plaintiff, debtors Bashir Chaudry and Naseer have failed to pay any money towards satisfying the judgments and have absconded.

17-   During the pendency of the lawsuit, (17-L-07194) and prior to its adjudication, Plaintiff Sheikh learned in 2019 that both debtors Bashir Chaudry and Naseer were trying to sell the 59th Street and 415 Pulaski gas stations, as well as some other assets that they had owned in anticipation of any judgment that the Court may enter against them. Fearing a fraudulent transfer, Plaintiff Sheikh filed a Motion on 5/6/2019, and notified the Court that Chaudry and Naseer had either fraudulently transferred the gas stations and/or were

actively contemplating selling these gas stations and other assets that they owned. (Exhibit F). Sheikh asked the Court to avoid those transfers or issue an order which would prohibit them from disposing off their assets.

18- At the hearings, Fadi Rafati, Counsel of debtors Bashir Chaudry and Naseer denied that their clients were trying to sell any of the assets and assured the Court that the Attorney will advise his clients not to sell anything during the pendency of the lawsuit. Upon the assurances of the debtors, the Court denied Sheikh's Motion without prejudice (Exhibit F: last page), and stated that the Court will not entertain any Motion to set aside fraudulent transfers or issue any other order to block the sale of Bashir Chaudry or Naseer's assets till Plaintiff Sheikh prevails on his lawsuit and is able to secure a judgment in his favor.

19- Despite Rafati's representations to the Court that his clients were selling nor contemplating Fraudulent Transfers, in reality debtor's Attorney Rafati was scouting for buyers for his clients and after finding the buyers, cemented multiple deals to sell Chaudry and Naseer's assets.

20- Attorney Rafati also prepared all closing documents including Real Estate Purchase Agreements, accepting $100,000.00 as escrowee for the 59th Street gas station. Attached are Real estate agreements and $100,000.00 in Cashier Checks wired by Attorney Rafati as down payment and copies of escrow agreements. (Exhibit G). Likewise Rafati also prepared agreements to sell the business (not the property) at the 415 Pulaski gas station.

21- In 2017, prior to filing the lawsuit, Plaintiff Sheikh had recorded lis pendens Notices with the Cook County Recorder of Deeds against the properties and businesses of debtor Chaudry and Naseer's properties. The purpose of recording the lis pendens was to notify the public of the pending lawsuit in Cook County. (Exhibit H).

8

## <u>CHAUDRY AND   NASEER'S ASSETS PRIOR TO 2017 LAWSUIT</u>
## <u>AND</u> <u>THEIR MACHINATIONS TO HIDE  OR TRANSFER THEIR ASSETS</u>

22-   At the filing of the lawsuit by Sheikh in Cook County, both debtor Chaudry and Naseer had considerable holdings which were conservatively estimated to be around $8,000.000.00 to $10,000,000.00. (Eight to ten million dollars). Some of those assets were disposed off by Bashir in **Strategic deliberate defaults,** while others were sold off in fire sales to avoid paying the Plaintiff. From the monies received from those sales, debtors Naseer and Chaudry purchased additional assets and businesses which they parked in names of their spouses, children and close family friends. Purpose was to hide their assets and defeat the judgement of the Cook County Court entered against them. Some of the assets that Chaudry Bashir and Naseer owned at the signing of the Promissory Notes and at the filing of the lawsuit and during its pendency of the lawsuit appear underneath. Plaintiff would like to point out that there may even be more assets out there which are not in this Plaintiff's knowledge and which may get known in due course of time, and in discovery.

### <u>Gas Station at 1224 W. 59th Street, Chicago</u>

23-   Plaintiff Sheikh sold this gas station to Chaudry in 2008 for $1,500,000.00. Out of which $1,200,000.00 was financed by Sheikh. Chaudry sold 50% shares in the gas station to Jahanzaib and his wife Aslam for $350,000.00, and all three operated the gas station under Loc Gas Inc.,The PIN Numbers of this property are: 20-17-131-018 to 024.

24-   Sometime in 2016 Bashir and Aslam decided to go in *strategic deliberate default,* so the gas station could be foreclosed by the Bank. Purpose of this deliberate default was to

wipe out all liens on the gas station, including the amounts owed to Plaintiff Sheikh, and then re-purchase the gas station in foreclosure sale, free and clear of all liens.

25-  Debtor Bashir Chaudry and Aslam also worked out a deal with the lender Hanmi Bank, prior to the foreclosure, which was negotiated by their attorney Rafati, which assured Hanmi Bank, that once foreclosed, they will purchase the property under a proxy, namely Mohammed Abdullah (Abdallah). Debtor Bashir Chaudry and Aslam also assured the bank that they will not shut down the gas station during the foreclosure process, to avoid any breakage, vandalism or precipitous fall in its value, and will continue to operate the gas station till it was re-purchased by them through their proxy Abdallah.

26-  Debtor Bashir Chaudry's attorney Rafati also negotiated the price of the re-purchase of the Gas station with the lender Hanmi bank and it was agreed between the parties that the Hanmi bank will re-sell the gas station to Rafati's client Abdallah for $700,000.00 after foreclosure.

27-  Rafati's client Abdallah was acting merely as a proxy, and was not the end buyer. It had been agreed between the debtors and Abdallah that he was just to act as a proxy, and upon purchasing the gas station at the foreclosure sale, Abdallah will turn around and re-sell the gas station back to Chaudry and Aslam. (Gas station loan was an SBA, Small business Administration) loan and SBA's regulations prohibited re-selling the assets back to the original owners who were in default, hence the scheme to repurchase the gas station thru Abdallah was concocted and was meant to hide their foot prints. As such a third party to act as a front was needed to hide the transaction from SBA and Banking regulators.

28-  In 2020 Mohammed Abdallah, as agreed with debtor and debtor's attorney Rafati, working as proxy for this transaction purchased the gas station from the bank for

$700,000.00. Abdallah acquired the title of the gas station purchased from the Hanmi Bank in a newly minted 59th LLC specially organized for this purpose.

29- The very day Abdallah acquired the gas station from Hanmi Bank, he re-sold it back to Aslam and Chaudry. In 2020 at its closing the gas station was estimated to be worth at least two million dollars, but Aslam and Bashir managed to buy it back from Abdallah for $1.2 million dollars, which is a 40% discount of its then existing market value.

30- Aslam and Bashir financed the purchase of the gas station by obtaining a mortgage worth $1,200,000.00 from the Millinium Bank (Exhibit I). Aslam acted as the mortgagor.

31- All four of them which included Abdallah, Bashir, Aslam and Rafati shared the excess proceeds over $700,000.00 which they had paid Hanmi bank to purchase the gas station in foreclosure and funneled the balance of $500,000.00 back to them, the difference between what they paid the bank to acquire the gas station, and the $1,200,000.00 loan, that they obtained from the Millinium bank. (Exhibit I: Closing statement).

32- This deliberate strategic foreclosure, in the scheme of things, served two purposes for Aslam and Chaudry. One they figured that foreclosure would wipe out all liens, and deprive the Plaintiff from recouping on his debt, and secondly it put additional cash in their pockets estimated to be over $125,000.00 each, for themselves and their team.

33- This Fraudulent transfer in a carefully calibrated deliberate default deprived the Plaintiff of an asset which could have been used to satisfy his debt and was equally useful in rendering useless the *'lis pendens'* notice Plaintiff had filed with the Recorder of deeds.

35- This fraudulent Transfer thru a deliberate default by the debtor Chaudry made him insolvent which prevented him from satisfying his debts to the Plaintiff.

36- This Fraudulent Transfer was made by Chaudry with actual intent to defraud the Plaintiff.

11

37-     As a matter of fact nothing changed either before, during the pendency of the foreclosure proceedings or after foreclosure, since Bashir Chaudry and his partner Aslam retained the business and the possession of the gas station during and after it's foreclosure.

38-     The transaction was concealed and different entities and individuals were used by debtor Bashir Chaudry and Aslam to hide this transaction.

39-      This transaction was contrived by the debtor Bashir Chaudry and Aslam when a lawsuit was pending against the debtor Chaudry and his partner Aslam in the Cook County law division seeking judgment against them.

40-     The transfer of the gas station to Aslam, who acted and continues to act as a front for Chaudry was to an insider and a close associate and partner of Bashir Chaudry.

41-     The transfer of this asset was substantial and comprised a major portion of Bashir Chaudry's assets.

42-     The value of the consideration received by the debtor Chaudry was way lower than the market value of the asset and was not reasonably equivalent to the value of the asset transferred or the amount received for this fabricated transaction.

**Gas Station at 415 South Pulaski Avenue, Chicago:**

43-      Naseer and Bashir Chaudry owned this gas station at 415 South Pulaski Avenue which they had purchased in 2015 for $2,2000,000.00. Fearing a judgment in the pending litigation could be entered against them, Bashir Chaudry and Naseer sometime in early 2019 tried to sell the property. Since a *lis pendens* had been placed on the property by Sheikh, the property could not be sold as Banks shied away from writing a loan for a property in litigation. The PIN Number of the property is:    16-14-112-037-0000

44-   To go around this hurdle, Bashir Chaudry and Naseer decided to sell the business only, (without real property), in which purchasers usually do not search title deficiencies.

45-   Hasan Safiuddin who was an old acquaintance of Bashir was offered the gas station business at a discount. The business alone was worth $800,000.00 but was offered and sold to Safiuddin at a steep discount for $450,000.00 in cash.

46-   The sale of the gas station was concealed by Bashir Chaudry and Naseer as the business is still being run under MDDS Inc., a corporation which is owned by Bashir Chaudry and Naseer, potentially giving them de-facto control of the property.

47-   Few months later Bashir Chaudry and Naseer went into strategic and deliberate default on this property as well and stopped making any mortgage payments to the lender Hinsdale Bank. During this time, Chaudry was introduced by a friend to One Soufian Abdelkader, who also owns and operates multiple gas stations in and around Chicago. Both Chaudry and Abdelkader concocted a plan, approached the Bank and worked out a 'short sale' arrangement of the gas station in which the bank agreed to sell the Note to Abdelkader for slightly over $800,000.00. (Exhibit J: Redacted: Cook County Court Protective Order).

48-A-   It has been learned by the Plaintiff that Bashir Chaudry along with the connivance of the Congress & Pulaski Real Estate LLC have re-sold the property. The property which was sold to Hasan Safiuddin earlier, as described above, has recently been transferred and leased to Pulaski Fuel Inc., and Ahmed Yehdhih, the owner of the said privately held corporation. City of Chicago's record indicate that this transfer took place around November 2023, as new business permits for operating the said gas station on 415 S. Pulaski were pulled by the said individual on the name of Pulaski Fuel Inc., (Exhibit Z).

The amount of money received by Chaudry and Congress and Pulaski LLC is estimated to be at lease $450,000.00 as the prior owner Safiuddin paid to lease and purchase this business. So to buy out Safiuddin, the previous lessee, the new lessee is estimated to have paid upwards of $450,000.00.

49-  Bashir Chaudry also owned another property under Naseer's name at 3635 West Armitage Avenue in Chicago, and both this property and gas station were on the same loan and with the same lender, (Hinsdale Bank) were purchased by Abdelkader in a so called 'short sale' camouflaged as a 'Note Purchase' for a sum cited earlier for slightly over $000,000.00. (Exhibit J). (Protective Order).

50-  The gas station which had been purchased by Chaudry and Naseer in 2015 for $2,200,000.00, is estimated to be worth at least $3,500,000.00 today.  As such the gas station which was sold for ($ protective order to keep it under wraps) in a deliberate and strategic default was sold at a substantial discount compared to its true market value. Sheikh has recently learned that Abdel Kader has turned around and sold his 'Note' to another company known as Congress & Pulaski Real Estate LLC for $600,000.00 over and above what Abdelkader paid Hinsdale Bank in a fraudulent 'short sale'.

51-  These fraudulent Transfers have made Bashir Chaudry and Naseer insolvent, making them unable to satisfy the Court judgments against them.

52-  These Fraudulent Transfer were made by Bashir Chaudry and Naseer with actual intent to hinder, delay or defraud the Plaintiff.

53-  The transaction was deliberately concealed and different entities, individuals and methods were used by Chaudry and Naseer to hide this transaction with the help of their

accountants and attorneys. Chaudry and Naseer made an additional corporation, along with MDDS Inc., which they named Awad Inc. to facilitate this transaction.

54- These transaction were contrived by Bashir Chaudry and Naseer when a lawsuit was pending or a judgment had been entered against them in the Cook County law division.

55- The transfer of the gas station was made to an old friend and acquaintance of Bashir Chaudry and Naseer.

56- The transfer of this asset, comprised a major portion of Bashir Chaudry's assets. Sale of this asset made Naseer and Bashir Chaudry insolvent and unable to pay the debt and satisfy the Court judgment entered against them.

57- The value of the consideration received by the debtors Bashir Chaudry and Naseer was way lower than the market value of the assets and was not reasonably equivalent to the market value of the asset transferred or the amount received for this transaction. One reason, Abdelkader during the supplemental proceedings wanted the sales price of the gas station be kept secret and had insisted that the Plaintiff sign an agreed protective order before releasing the price he paid for the gas station to the Plaintiff, as the price he had paid for this asset was ridiculously lower than the market value.

**Liquor Store at 3635 W. Armitage Avenue, Chicago.**

58- In 2001 Plaintiff Sheikh sold a liquor store located at 3635 West Armitage Avenue in Chicago to Bashir Chaudry. The transaction included real property, and the sales price was set at $399,000.00 (Exhibit R). Bashir Chaudry borrowed and assumed a mortgage for $350,000.00 from a local bank. The PIN Number of the property is: 13-35-305-047.

59- In 2012 Bashir went into a deliberate default on this property and stopped making mortgage payments to the Bank. It left the Bank with a choice to either file foreclosure

proceedings in the Court, which would have resulted in substantial legal fees, and eighteen months or more of receiving no payments on its loan during the pendency of the foreclosure proceedings, or as an alternative, sell the property in a "short sale".

60- Having cornered, the Bank agreed to a 'short sale' and Chaudry repurchased the property in his brother and sister-in-law Naseer's name. Naseer paid the Bank $206,000.00 (Exhibit S). Through this strategic and deliberate default, Bashir Chaudry shaved off almost $140,000.00 from the price he paid on original the mortgage, and still kept the property under his ownership and control.

61- After purchasing the liquor store in a "short sale", Chaudry continued to make payments thru his brother and sister in law till the end of 2016, and once again went in another deliberate default and stopped making further payments to the Bank on his mortgage.

62- It was learned recently by Plaintiff Sheikh that few months ago Chaudry Bashir has transferred the liquor store business to his son Ali. Since Ali is yet to receive his liquor license, he is using the liquor license of his mother Qadir, which Bashir had obtained few years earlier in his wife's name. Bashir Chaudry used different individuals and entities to hide this transaction from his creditors including this Plaintiff.

63- The total amount Bashir Chaudry received for concocting this second deliberate "short sale" of Armitage liquor store and the gas station as outlined above at 415 S. Pulaski Avenue was $600,000.00. Apart from pocketing 600,000.00, Bashir Chaudry also managed to make these properties out of reach for Plaintiff Sheikh, which Sheikh could have sold after getting the judgment to recoup on his judgment. As noted earlier, Note obtained in short sale by Abdelkader from Hinsdale Bank for the 415 Pulaski Gas station and liquor store at 3635 W. Armitage has been re-sold in May 2023 by Abdelkader to

16

another company 'Congress & Pulaski Real Estate LLC' which is owned by Junaid Ahmed, both defendants in this complaint. Congress & Pulaski with the connivance and full agreement of Naseer and Chaudry have lately transferred this asset to Ahmed Yehdhih and his fully owned corporation, Pulaski Fuel Inc.,

64- Plaintiff would like to point out that Congress & Pulaski LLC owns numerous gas stations, and has no history, like Abdelkader of purchasing Notes from banks.

64- The combined value of 3635 Armitage liquor store and 415 S. Pulaski gas station is estimated to be around $2,800,000.00, which was sold to Abdelkader in a "short sale" for far less than its true market value for a paltry sum of $000,000.00 (Price withheld: Protective Order of Cook County Court).

65- This fraudulent Transfer made debtors Bashir Chaudry and Naseer insolvent, making them unable to satisfy the Court judgment.

66- This Fraudulent Transfer was made by Bashir Chaudry and Naseer with actual intent to defraud the Plaintiff.

67- The transaction was kept hidden and different entities were used by Bashir Chaudry and Naseer to hide this transaction.

68- This transaction was contrived by Bashir Chaudry and Naseer when a lawsuit was pending in the Cook County law division seeking judgment against both, and/or a judgment had been either entered or was about to be entered against them.

69- The transfer of the liquor store property was made to Abdelkader, an old friend and acquaintance of Bashir Chaudry and Naseer.

70- The transfer of this asset was substantial and comprised a major portion of Bashir's assets on which the debts owed to the Plaintiff could have been satisfied. This transfer has made Bashir Chaudry and Naseer insolvent and unable to satisfy the Court judgment.

71- The value of the consideration received by the debtors Bashir Chaudry and Naseer, as well as Abdelkader, Congress Pulaski Real Estate Inc., for the gas station or the transfer of liquor store by Bashir to his son, believed to have been made for no consideration at all, was way lower than the market value of the assets and was not reasonably equivalent to the market value of the asset transferred or the amount received for this transaction. The transfer was made to an insider, in this case to his son.

Sheikh would also like to point out that Bashir Chaudry has successfully used the strategic and deliberate defaults on multiple occasions on numerous other properties. Just few of the properties which were transferred using this method are:

-Gas station at 3700 West 111th Street, Chicago.

- Strip Center at 6119-6131 S. Ashland Avenue, Chicago.

-Priceless Groceries, 501 W. Fairchild Road, Danville, Illinois.

-Strip Center at 5049 West Madison, Chicago, Illinois.

Above mentioned properties are not part of this Complaint, and Plaintiff will not delve into different tactics Chaudry used in pulling each "short sale" and are mentioned for reference alone, so the Court could see through the expertise Chaudry has employed in manipulating and deceiving banks and other creditors going back two decades.

**Grocery Store at 951 Lewis Avenue, Waukegan, Illinois.**

72-     In 2015 Bashir Chaudry and Naseer purchased the grocery store at 951 South Lewis Avenue in Waukegan, Illinois, a far northern municipality close to Wisconsin. The property is located in Lake County and bears the PIN Number of 08-29-400-029-0000.

73-     Naseer paid $417,000.00 for the real property and another $350,000.00 was paid for the business and fixtures of the property.

74-     After the initiation of the lawsuit by the Plaintiff (17 L 07194), and in anticipation of a judgment being entered against Naseer, who had the property title parked under Sandal Inc., transferred the business (not property) to Indus USA Inc. in 2023.

75-     This Fraudulent Transfer has divested Naseer and Bashir Chaudry of another asset that could have been utilized by the Plaintiff towards executing and partially satisfying his judgment.

76-     The grocery store was transferred by Naseer to Indus USA Inc. for very little or no consideration at all.

77-     This fraudulent Transfer has made Naseer and Chaudry insolvent, making them unable to satisfy the judgments against them.

78-     This Fraudulent Transfer was made by Naseer and Chaudry with actual intent to hinder, delay and defraud the Plaintiff.

79-     The transaction was deliberately concealed and different entities and individuals were used by the debtors to hide this transaction.

80-      This Fraudulent Transfer was contrived by Naseer and Bashir when a lawsuit was pending in the Cook County law division seeking judgments against Chaudry and Naseer.

81-     This Fraudulent Transfer of the grocery store was made by Naseer and Bashir to an insider.

82-     The transfer of this asset was substantial and comprised a major portion of debtor's assets.

83-     The value of the consideration received by Naseer or Bashir Chaudry was insignificant and way lower than the market value of the assets and was not reasonably equivalent to market value of the asset transferred or the amount received for this transaction.

**Grocery Store at 1401 14th Street, Waukegan.**

84-     Being flush with money by concocting multiple 'short sales' and 'strategic deliberate defaults' and holding sizeable cash, Chaudry over the next few months purchased numerous businesses, on his children or close friends or relatives names to conceal the true ownership of those businesses. One of the businesses that Bashir Chaudry purchased was a grocery store located at 1401 14th Street, in Waukegan, Illinois for which Bashir Chaudry paid over $100,000.00 in cash. The business was purchased by Chaudry in 2018.

85-      In an effort to hide the true ownership of the liquor store, Chaudry put the business in his daughter Mahin's name. Bashir also had all business licenses issued in Mahin's name, including liquor license to conceal the true ownership of the business.

86-     The business is fully run, operated and managed by the debtor Chaudry and his daughter is merely a figurehead, who attended a local college when he purchased the store. Bashir Chaudry retains control over the business, and remains the main beneficiary of all profits and proceeds of this business.

87-     This fraudulent Transfer of $100,000.00 cash to purchase the business on his daughter's name made Bashir insolvent, making him unable to satisfy the judgments against him.

88-     This Fraudulent Transfer was made by Bashir Chaudry with actual intent to hide, hinder, delay and defraud the Plaintiff.

89-   The transaction was deliberately concealed and different entities and individuals were used by Bashir Chaudry, including is daughter Mahin to hide this transaction.

90-   This transaction was consumed by Chaudry when a lawsuit was pending in the Cook County law division seeking judgment against Bashir for debts he owed the Plaintiff.

91-   The transfer of $100,000.00 cash to Mahin and the purchase of business was made to an insider who happened to be the daughter of the debtor Bashir Chaudry.

92-   The transfer of this asset was substantial and comprised a major portion of Bashir's assets which made Bashir insolvent and unable to satisfy his debts to the Plaintiff.

**<u>Liquor Store at 4200 West Armitage Avenue, Chicago.</u>**

93-   After concocting short sales and deliberate defaults, Bashir Chaudry who was flush with cash, decided in April 2020 to make another investment and purchased a liquor store located at 4200 West Armitage Avenue in Chicago. For this business Bashir paid One named Aziz over $130,000.00 in cash.

94-   As usual fearing a judgment in the lawsuit that was filed by the Plaintiff to recover the sums Bashir Chaudry owed him, Bashir put the business in Syed Jahantab's name, who happens to be the son of an old friend of Chaudry Shah Jee.

95-    All licenses and leases of this liquor store are in Jahantab or on his entities name, but Bashir Chaudry remains the true owner and maintains total control over the operation and management of the business. Chaudry also remains the beneficiary of the profits and the proceeds of the business.

96-   This fraudulent Transfer of $130,000.00 cash to Jahantab and to purchase the business on his close friend's name made Bashir insolvent, making him unable to satisfy the judgments against him.

97- This Fraudulent Transfer was made by Bashir Chaudry with actual intent to hide cash from his creditors, and defraud the Plaintiff.

98- The transaction was deliberately concealed and different entities and individuals were used by Bashir Chaudry to hide this transaction.

99- This Fraudulent Transfer was perpetrated by Bashir Chaudry when a lawsuit was pending in the Cook County law division seeking judgment against Chaudry for debts he owed the Plaintiff.

100- The transfer of $130,000.00 cash and the purchase of business was made to an insider who happened to be the son of his close friend Shah Jee.

101- The transfer of this asset was substantial and comprised a major portion of Bashir Chaudry's assets. It also made Bashir insolvent and unable to pay the Court judgement.

**Liquor Store at 4234 W. Fullerton, Chicago**

102- Apart from investing in Jahantab's name on the 4200 West Armitage business, Bashir Chaudry also invested over $80,000.00 in 2020 on a business that Jahantab had been operating since 2005. This business was run by Jahantab's father Shah Jee, but upon his death was taken over by Jahantab, Shah Jee's son.

103- Bashir Chaudry invested this money to upgrade the store, purchase additional inventory as he converted the store to a liquor store, which previously didn't have a liquor license.

104- This fraudulent Transfer of $80,000.00 in cash to purchase the 50% share in the liquor store with Jahantab made Bashir Chaudry insolvent and unable to satisfy judgement.

105- This Fraudulent Transfer was made by Chaudry with actual intent to hide the cash from his creditors and defraud the Plaintiff.

106- The transaction was deliberately concealed and different entities and individuals were

used by Bashir to hide this transaction.

107-    This transaction was contrived by Bashir when a lawsuit was pending in the Cook County law division seeking judgment against Bashir for debts he owed the Plaintiff.

108-    The transfer of $80,000.00 in cash and the purchase of business was made to an insider who happened to be the son of his long time friend, Shah Jee.

109-    The transfer of this asset was substantial and comprised a major portion of Bashir's Assets. Transfer of these assets made Chaudry insolvent.

**Gas Station at 7283-87 South Chicago Avenue, Chicago.**

110-    In 2005 debtor Bashir Chaudry purchased a property located at 7283-87 S. Chicago Avenue in Chicago, in which One Nusrat Choudhri was his partner. Property was financed by a loan from Allegiance Bank (Exhibit K). The property consisted land as well as the business which sold fuels and additives. Both Bashir Chaudry and Nusrat Chaudhri managed, owned and operated the gas station.

111-    According to an unverified "transfer document" which is not authenticated, notarized or certified, Choudhry Nusrat claims that Bashir sold him his 50% share of the land on which the gas station/building was located for a symbolic sum of $10.00 (Exhibit L).

112-    Bashir Chaudry having sold the land and property, retained the ownership of the gas station business and on information and belief, in early 2017 sold 50% of the gas station operation to One Shmaila Rafiq for $250,000.00.

113-    The partnership between Bashir Chaudry and Rafiq is proven by certain documents which were filed with the Cook County Recorder of Deeds in 2015 by Gas Depot Inc., a wholesale gas merchandiser, who supplies fuel and related additives to the gas stations. Additional documents related to this transaction including a 'Right of First refusal' were

also recorded in April 2018 by Byline Bank with the Cook County Recorder of Deeds. As per these documents Chaudry and Naseer granted Gas Depot right of first refusal to purchase or decline to purchase the gas station in case the property was ever sold. (Exhibit M).

114-   This 'Right of first refusal' document conveys the impression that debtor Bashir Chaudry may have re-purchased the real estate or partially re-purchased the real estate back from Nusrat Chaoudhri, to whom debtor sold his 50% share in 2011. Under the legally recognized principals, only an individual having ownership interest in a property can grant the 'right of first refusal' to a third party. Apart from the above in 2023 in response to a Citation issued to Nusrat Chaoudhri in supplemental proceedings in Cook County, Chaudhri filed a detailed response on 10/2/2023, in which he acknowledged that the gas station (business not the property) was indeed owned by Chaudry and Rafiq. (Exhibit N: Pages 3, 4).

113-   The gas station (business and building) was estimated in 2024 to have a combined value in excess of over $2,500,000.00 (two million five hundred thousand dollars), whereas the business alone which is owned by Bashir Chaudry and Rafiq is conservatively estimated to be worth $800,000.00

117-   This fraudulent Transfer of the 50% of the business shares of Bashir, to Rafiq made Bashir insolvent, making him unable to satisfy the judgments against him.

118-   This Fraudulent Transfer was made by Bashir to Rafiq with actual intent to hide his assets from his creditors and defraud the Plaintiff.

119-   The transaction was deliberately concealed and different entities and individuals were used by Bashir and Rafiq to hide this transaction.

120- The transfer of the 50% of the business to Rafiq was less than the market price of the business had it been sold in open market.

120- This transaction was contrived by debtor Chaudry when a lawsuit was pending, or a judgment was about to be entered against him in a court of law in Cook County. The transaction was concealed and was meant to hide it from being known to Bashir Chaudry's creditors including the Plaintiff.

121- The transfer of this asset was substantial and comprised a major portion of Bashir's assets which made Chaudry Bashir insolvent and unable to pay his creditors.

**Purchase of a luxury Single Family House in Lincolnwood**

122- Having sold the gas station at 415 Pulaski Avenue, the liquor store at 3635 Armitage Avenue and the 59th Street gas station, debtor Bashir Chaudry was awash and loaded with substantial amounts of cash. Debtor knew that having that much cash after a judgment that had been entered against him, or was to be entered against him was risky. As such debtor Chaudry decided to invest this cash in a way that it could not be easily traced. To perpetrate this scheme, debtor Chaudry decided to park this cash in real estate and purchased a single family home in Lincolnwood, Illinois.

123- Since debtor Chaudry Could not purchase the house under his or his wife's name, he formed a new LLC, specifically for this purpose in 2021, namely Qadir's LLC. and nominated his minor children Ali and Rabia as its members. (Exhibit P).

125- Purpose of forming a new LLC was to hide and shield the assets of debtor Chaudry from the Plaintiff. The purchase of the house was totally handled by the debtor in which Chaudry located the house, made offers to purchase the house, negotiated the sales price,

25

hired Attorney Sheraz Darr for closing, went to the closing of this house and paid $470,000.00 in cash to purchase the house (Exhibit Q).

126- The debtor's minor children nominally own the Qadir's LLC, whereas Chaudry retains actual control over the LLC, and is the true owner of the house. Purpose of parking the house in Qadir's LLC was to defraud his creditors by making it difficult to trace his assets, which could be leveraged and sold to satisfy the judgements against him.

126- This transaction was kept hidden by Chaudry and perpetrated in complete secrecy.

127- This Fraudulent Transfer was made by Bashir with actual intent to hide the cash from his creditors and defraud the Plaintiff.

128- The transaction was deliberately concealed and different entities and individuals were used by the debtor to hide this transaction. The disposition of almost half a million dollars of cash made Bashir Chaudry insolvent and unable to pay his debts to the Plaintiff.

129- This transaction was contrived by Bashir Chaudry when a lawsuit was pending in the Cook County law division against Chaudry, which sought judgment against him for debts he owed the Plaintiff or judgment which was about to be entered against Chaudry.

130- The transfer of $470,000.00 in cash to close relatives, in this instance to his minor children for the sole purpose of purchasing this luxury house in Lincolnwood was made to insiders with the intent to defraud his Creditors including this Plaintiff.

131- The transfer and disposition of $470,000.00 in cash is a substantial sum by any standard and comprised a major portion of Bashir's assets.

132- The disposition of such a large sum of cash has made Bashir insolvent and unable to pay his debts, including the debt of the Plaintiff.

**Debtor Chaudry invests in an Additional $125,000.00 in a Grocery Store in Wheaton**

133- Plaintiff has just recently unearthed another investment by the debtor Bashir Chaudry in which Chaudry has invested over $125,000.00 in cash and purchased a grocery store located at 326 West Liberty Road in Wheaton.

134- In this transaction it is believed that Chaudry Bashir paid $125,000.00 cash to a close associate Amjad Chaudry in 2022 for the sole purpose of purchasing the liquor store in Wheaton. Both Chaudry and Amjad Chaudry are equal 50/50 partners in this joint venture. Too hide this asset, Chaus invented a brand new corporation he named **BCA** investments Inc., (BCA stands for Bashir Chaudry Amjad).

135- Bashir Chaudry invested this money with Amjad, a close relative of his, to hide and conceal his assets and to defraud and deceive the Plaintiff.

136- This disposition of over $125,000.00 in cash has made Bashir insolvent and unable to pay his debts and liabilities to his creditors including to this Plaintiff.

137- The purchase of this asset was made in secrecy and different set of individuals and entities were used to purchase this asset.

138- This investment has made the debtor insolvent and unable to satisfy his obligations including the judgement that was entered against Chaudry by the Court.

139- The purchase of this asset and transferring cash was made to a close relative.

## CURRENT STATUS

137- Since the debtors Chaudry and Naseer are doing everything in their power to avoid having to satisfy the judgements, they have moved surreptitiously and with great secrecy. Current status is that Plaintiff continues to investigate and these investigations are ongoing, with an attempt to reconstruct the universe of Fraudulent Transfers between and amongst the debtors Chaudry Bashir, Naseer and their relatives and friends. So far

Plaintiff has relied on some records filed with the Cook County Recorder of Deeds but true scope and extent of debtors' conversions and transfers still remains under wrap. There is a strong possibility that out there are assets which are owned by Chausry and Naseer, are hidden or concealed under layers of corporate or personal machinations. For example the purchase of the Lincolnwood house uncovered just weeks ago by Sheikh was so well concealed by Chaudry, that to unearth or disentomb this transaction was practically an impossible task.

138- Debtors actions are a combination of deceit and actual fraud which is defined as anything that counts as 'fraud' and is done with wrongful intent", in other words fraud that involves moral turpitude or intentional wrong. All geared toward a single goal: hide assets with the sole intent to deny, delay, defraud and defeat the Court judgement.

## SOME FRAUDULENT TRANSFERS WERE ARTFULLY DECEPTIVE & PLAINTIFF HAD TO DIG DEEP TO UNCOVER THE "BADGES OF FRAUD"

138- For Plaintiff it want's easy to uncover some of the fraudulent transfers as described above, that debtors perpetrated. It took assiduous work to connect the dots to manifest these 'badges of fraud'. Countless hours were spent straining the Cook County Recorders' office sifting through dozens and dozens of documents.

139- Illinois Supreme Court has explained that under prior statutes badges of fraud and the common law do not in themselves constitute fraud, but are rather signs or indicia from which the existence of fraud may be properly inferred as a matter of evidence. Court further explained that badges of fraud are not conclusive but can be strong or weak, according to their numbers and concurrence in the same case and may be established by evidence and the bona fides of each particular transaction alleged by the Plaintiffs.

## DEBTORS  CHAUDRY & NASEER DO NOT HAVE

## ENOUGH  ASSETS TO SATISFY JUDGEMENTS

138-    Both debtors Bashir Chaudry and Naseer who had assets totaling at least $8,000.000.00
to $10,000,000.00 before the Plaintiff took them to Court, now claim that they are
insolvent and have no money or any other assets to satisfy the Court judgements entered
against them. Debtors further claim that they do not even have a bank account. The house
which is owned by Chaudry Bashir at 6655 N. Monticello Avenue in Lincolnwood and
the house owned by Naseer at 3673  West Northshore Avenue in Lincolnwood have
multiple judgments listed against them, and those judgment liens have been placed on
their properties before Sheikh's judgment. Those pre-recorded judgements totaling over
$284,000.00 are superior to Sheikh's judgement and have priority over the Plaintiff's
judgment, making it futile to foreclose on those properties. (Exhibit Z).

139-    Plaintiff has uncovered some properties fraudulently transferred but many more remain
hidden. Those properties will be added, with Court's permission as this case progresses.

## ILLINOIS FRAUDULENT TRANSFER ACT 740 ILCS 160

## VOIDS FRAUDULENT TRANSFERS

139-    **740 ILCS 160/6(A) states:**

(a)  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose
claim arose before the transfer was made or the obligation incurred if the debtor made
the transfer or incurred the obligation without receiving a reasonably equivalent value in
exchange for the transfer or obligation and the debtor was insolvent at the time or the
debtor became insolvent as a result of the transfer or obligation.

140-    **740 ILCS 160/5 states in pertinent part:**

**(Also known as:  'Badges of Fraud')**

29

(a)   A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

 (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

 (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

 (b) In determining actual intent under paragraph (1) of subsection (a), consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

 (3) the transfer or obligation was disclosed or concealed;

 (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

 (6) the debtor absconded;

  (7) the debtor removed or concealed assets;

 (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

  (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

  (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

141-    **740 ILCS 160/8 states in pertinent part:**

 (a) In an action for relief against a transfer or obligation under this Act, a creditor, subject to the limitations in Section 9, may obtain:

 (1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure;

 (3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

 (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

 (B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

 (C) any other relief the circumstances may require.

(b)  If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

## CAUSES  OF  ACTION

### Count I: Against Chaudry Bashir for Avoidance of Actually Fraudulent Transfers

For Count I of its second verified Complaint, Sheikh incorporates the allegations contained in the preceding paragraphs 1 through 141 as if part and parcel of this Count, and further states as follows:

142-  Bashir Chaudry perpetrated each of the Fraudulent Transfers as noted above by disposing off gas stations on 59th Street, another gas station at 415 South Pulaski Avenue, liquor store property at 3635 Armitage Avenue, grocery store at 951 S. Lewis Avenue in Waukegan, liquor store at 4200 W. Armitage Avenue, another liquor store at 4234 West Fullerton Avenue, luxury single family house at 7001 North Keeler Avenue in Lincolnwood and transferred them to the members of his family, friends of the family, Spouse, son, daughters and other close associates.

143-  These Transfers were made with the actual intent to hinder, delay or defraud Plaintiff.

144-   These transfers made Chaudry Bashir insolvent and unable to pay his debts.

145-   Transfers were made when Plaintiff had filed or about to file a lawsuit, in which Judgment had been rendered or was about to be rendered and Chaudry intended to put his assets out of reach for the Plaintiff.

146-   The transfers were concealed and were kept a close secret by Chaudry Bashir.

147-  Transfers were made below the equivalent market value that could be obtained in an open market transaction.

147-   **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor

31

of the Plaintiff and against Bashir, thus:

A.    avoiding all the Transfers as itemized above,

B.    preserving the avoided Transfers for the benefit of the Plaintiff;

C.    awarding Plaintiff a money judgment against Bashir or/and his transferees, for
$1,535,000.00 plus statutory interest from the date of the judgment, and

D.    granting all other relief which this Court deems is just and proper in the premises.

**Count II: Against Bashir for Avoidance of Constructively Fraudulent Transfers**

148-    For Count II of its Second Verified Complaint, Plaintiff incorporates the allegations
contained in the preceding paragraphs 1 through 141, and further states that in
determining actual intent under paragraph (1) of subsection (a), of 740 ILCS 160/5 of
UFTA, Court should give due consideration to the following badges of fraud:

149-    Chaudry made each of the Constructively Fraudulent Transfers including but not limited
to 415 Pulaski gas station, 1224 W. 59th Street, Chicago, 951 S. Lewis Avenue,
Waukegan, 4200 W. Armitage Avenue, Chicago, 3635 W. Armitage Avenue, Chicago and
4234 W. Fullerton Avenue in Chicago and 7001 North Keeler Avenue in Lincolnwood to
an insider including members of his family, children, friends and close associates.

150-    Each of the Constructively Fraudulent Transfer was made without the transferor
receiving a reasonably equivalent value in exchange while the transferor was engaged or
was about to engage in a business or transaction for which its remaining assets were
unreasonably small in relation to its business or the transaction.

151-    Each of the Constructively Fraudulent Transfers was made without the transferor
receiving a reasonably equivalent value in exchange and the transferor intended to incur,

or reasonably should have believed, that the transferor would incur debts beyond the transferor's ability to pay as the debts became due.

152- Debtor Chaudry continued to own the asset he sold and exercised control over it.

153- Transfers of virtually of all debtors' assets which could be used to satisfy judgement.

154- Transfers were made when Chaudry was insolvent or transfers rendered him insolvent.

155- Chaudry transferred assets to a lienor, who later transferred the asset to an insider.

152- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against Bashir thus:

A.    avoiding all Constructively Fraudulent Transfers Chaudry made as itemized above;

B.     preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C.    awarding Plaintiff a money judgment against Chaudry in the amount of the Constructively Fraudulent Transfers of at least $1,535,000.00 plus post-judgment interest, and costs of the proceedings;

D.    and granting all other relief which this Court deems is just and proper in the premises.

### **Count III: Against Naseer for Avoidance of Actually Fraudulent Transfers**

For Count III of its Verified Complaint, Sheikh incorporates the allegations contained in the preceding paragraphs 1 through 141 as if part and parcel of this Count, and further states as follows:

153-    Naseer perpetrated each of the Fraudulent Transfers as noted above by disposing off gas stations at 415 South Pulaski Avenue, Liquor store at 3635 Armitage Avenue, grocery store at 951 S. Lewis Avenue in Waukegan, and transferred them to her family, friends, sister-in-law and other close associates.

154-    These Fraudulent Transfers were made with the actual intent to hinder, delay or defraud

Plaintiff.

155- These transfers made when Naseer was insolvent and unable to pay her debts.

156- Transfers were made when Plaintiff had filed or was about to file a lawsuit against Naseer and Naseer intended to put her assets out of reach of the Plaintiff.

157- The transfers were concealed and were kept a close secret by Naseer.

158- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff and against Naseer, thus:

A. avoiding all Transfers as itemized above,

B. preserving the avoided Fraudulent Transfers for the benefit of the Plaintiff;

C. awarding Plaintiff a money judgment against Naseer or/and her transferees, for a minimum of $257,000.00 plus post judgment interest, and

D. granting all other relief which this Court deems is just and proper in the premises.

### Count IV: Against Naseer for Avoidance of Constructively Fraudulent Transfers

159- For Count IV of its Verified Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 141, and further states that in determining actual intent under paragraph (1) of subsection (a), of 740 ILCS 160/5 of UFTA, Court should give due consideration to the following badges of fraud:

160- Naseer made each of the Constructively Fraudulent Transfers including 415 Pulaski gas station, 3635 W. Armitage Chicago, and 951 Lewis Avenue, Waukegan.

161- Each of the Constructively Fraudulent Transfers was made without the transferor receiving a reasonably equivalent value in exchange while the transferor was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business or the transaction.

162-    Each of the Constructively Fraudulent Transfers was made without the transferor receiving a reasonably equivalent value in exchange for what the transferor intended to incur, or reasonably should have believed, that the transferor would incur debts beyond the transferor's ability to pay as the debts became due.

163-    Transfer was to hinder, delay or deny satisfying the judgement.

164-    Transfer was concealed and was perpetrated in secrecy.

165-    Debtor Naseer transferred assets to a Lienor, who transferred the assets to an insider.

166-    Transfers were made when Naseer was insolvent or about to become insolvent.

163-    **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against Naseer, thus:

A.    avoiding the Constructively Fraudulent Transfers Naseer made as itemized above,

B.     preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C.    awarding Plaintiff a money judgment against Naseer in the amount of the Constructively Fraudulent Transfers of at least $257,000.00  plus post-judgment interest, and costs of the proceeding;

D.    and granting all other relief which this Court deems is just and proper in the premises.

**Count V: Against Ahmed Yehdhih & Pulaski Fule Inc., for Avoidance**

**of Actually Fraudulent Transfers**

For Count V of its Verified Complaint, Sheikh incorporates the allegations contained in the preceding paragraphs 1 through 163 as if part and parcel of this Count, and further states as follows:

164-    Ahmed Yehdhih along with his fully owned entity Pulaski Fuel Inc., participated in and perpetrated each of the Fraudulent Transfers as noted above by fraudulently accepting the

gas station at 415 South Pulaski Avenue in Chicago, to his fully owned Pulaski Fuel Inc., knowing that he was doing so to make that asset unreachable to the Plaintiff.

165- The Fraudulent Transfer was made with the actual intent to hinder, delay or defraud Plaintiff.

166- These transfers made the debtors including the transferor Chaudry insolvent and unable to pay the debts he owed. Transfers were made to a close friend of Chaudry.

167- Transfer was made when Plaintiff had filed or was about to file a lawsuit against the debtors and the debtors intended to put their assets out of reach to the Plaintiff.

168- The transfers were concealed and were kept a close secret by Ahmed Yehdhih and his fully owned entity Pulaski Fuel Inc.,

169- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff and against Ahmed Yehdhih his fully owned entity Pulaski Fuel Inc., thus:

A: avoiding the Fraudulent Transfers,

B. preserving the avoided Fraudulent Transfers for the benefit of the Plaintiff;

C. awarding Plaintiff a money judgment against Ahmed Yehdhih and his fully owned corporation Pulaski Fuel Inc., of at least $257,000.00 plus post judgment interest and

D. granting all other relief which this Court deems is just and proper in the premises.

### Count VI: Against Ahmed Yehdhih & Pulaski Fuel Inc., for Avoidance of Constructively Fraudulent Transfers

170- For Count VI of its second Verified Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 169, and further states that in determining actual intent under paragraph (1) of subsection (a), of 740 ILCS 160/5 of UFTA, Court should give due consideration to the following badges of fraud:

171-   Ahmed Yehdhih along with his fully owned entity Pulaski Fuel Inc., made each of the Constructively Fraudulent Transfers and transferred an asset to his fully owned privately held corporation Pulaski Fuel Inc., namely the 415 Pulaski gas station in Chicago.

172-   Each of the Constructively Fraudulent Transfers were made without the transferor receiving a reasonably equivalent value in exchange while the transferor was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business or the transaction.

173-   Transfers were made when Naseer was insolvent or about to become insolvent.

174-   Transfers occurred shortly before or shortly after a substantial debt was incurred.

174-   **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against Ahmed Yehdhih and Pulaski Fuel Inc, thus:

A.     avoiding the Constructively Fraudulent Transfers so made;

B.     preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C.     awarding Plaintiff a money judgment against Ahmed Yehdhih and Pulaski Fuel Inc., in the amount of the  Constructively Fraudulent Transfers of a minimum amount of $257,000.00  plus post-judgment interest, and costs of these proceedings,

D.     and granting all other relief which this Court deems is just and proper in the premises.

### Count VII: Against Junaid Ahmad, Congress Pulaski Real Estate Inc.,

### for Avoidance of Actually Fraudulent Transfers

For Count  VII of its Verified Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 141, and further states that in determining actual intent under paragraph (1) of subsection (a), of 740 ILCS 160/5  of UFTA, Court should give due consideration to the following badges of fraud:

175     Junaid Ahmad and his fully owned Congress & Pulaski RE Inc., participated in and

        perpetrated each of the Fraudulent Transfers as noted above by fraudulently accepting the

        gas station at 415 South Pulaski Avenue in Chicago, as well as liquor store located at

        3635 W. Armitage Avenue, in Chicago, knowing that he was doing so to make that asset

        unreachable to the Plaintiff. Purchase was disguised as purchasing the Note on which

        Chaudry Bashir deliberately defaulted.

176-    The Fraudulent Transfer was made with the actual intent to hinder, delay or defraud the

        Plaintiff.

177-    These transfers made the debtors including the transferor Bashir insolvent and unable to

        pay the debts he owed, and transfers were made to a close friend or associate, and was

        made at prices way lower at what those assets could have been sold in the open market.

178-    Transfer was made when Plaintiff had filed or was about to file a lawsuit against the

        debtors and the debtors intended to put their assets out of reach to the Plaintiff.

179-    The transfers were concealed and were kept a close secret by Junaid along

        wih their corporate entities of Congress Pulaski Real Estate Inc.

180-    **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff

        and against Junaid Ahmad, and Congress & Pulaski RE Inc., by:

A.      avoiding the Fraudulent Transfers,

B.      preserving the avoided Fraudulent Transfers for the benefit of the Plaintiff;

C.      awarding Plaintiff a money judgment against Junaid Ahmad and against  Congress &

        Pulaski Real Estate for a minimum of $1,535,000.00 plus post judgment interest,

D.      granting all other relief which this Court deems is just and proper in the premises.

### Count VIII: Against Junaid Ahmad and Congress & Pulaski for
### Avoidance of Constructively Fraudulent Transfers

181-    For Count II of its Verified Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 141, and further states that in determining actual intent under paragraph (1) of subsection (a), of 740 ILCS 160/5 of UFTA, Court should give due consideration to the following badges of fraud:

182-    Junaid Ahmad and Congress & Pulaski Inc., made each of the Constructively Fraudulent Transfers which included the 415 Pulaski gas station as well as the Liquor store at 3635 W. Armitage Avenue in Chicago.

183-    Each of the Constructively Fraudulent Transfers were made without the transferor receiving a reasonably equivalent value in exchange while the transferor was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business or the transaction.

184-    Each of the Constructively Fraudulent Transfers was made without the transferor receiving a reasonably equivalent value in exchange and the transferor intended to incur, or reasonably should have believed, that the transferor would incur debts beyond the transferor's ability to pay as the debts became due. Transfer was disguised as a Note purchase.

185-    Transfers occurred shortly before or shortly after a substantial debt was incurred.

186-    Defendants actions made Chaudry, Junaid and Congress & Pulaski insolvent.

186-    Transfers were made to hinder, delay and defraud the Plaintiff.

185-    **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against Junaid Ahmad and his wholly owned Congress & Pulaski RE Inc., thus:

A.     avoiding the Constructively Fraudulent Transfers so made;

B.     preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C.     awarding Plaintiff a money judgment against Junaid Ahmad and Congress Pulaski Real Estate in the amount of the Constructively Fraudulent Transfers of at least $1,535,000.00 plus post-judgment interest, and costs of the proceedings;

D.     and granting all other relief which this Court deems is just and proper in the premises.

**Count IX: Against  Jahantab for Avoidance of Actually Fraudulent Transfers of  Liquor stores at 4200 West Armitage Avenue &  4234 W. Fullerton Avenue.**

For Count IX of its second Verified Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 141, and further states as follows:

186-   Jahantab participated in and perpetrated each of the Fraudulent Transfers as noted above by fraudulently accepting the liquor stores located at 4200 West Armitage Avenue in Chicago, and an additional liquor store located at 4234 West Fullerton Avenue in Chicago, knowing that he was doing so to make that asset unreachable to the Plaintiff.

187-    The Fraudulent Transfer was made with the actual intent to hinder, delay or defraud Plaintiff and were made to Jahantab, who is the son of Bashir's close friend Shahjee.

188-   These transfers made the debtors including the transferor Bashir insolvent and unable to pay the debts he owed.

189-   Transfer was made when Plaintiff had filed or was about to file a lawsuit against the debtors and the debtors intended to put their assets out of reach to the Plaintiff.

190-   The transfers were concealed and were kept a close secret by Jahantab,

191-   Jahantab acted as a proxy whereas Bashir Chaudry still controls the businesses,

193-   Transfers were made with the actual intent to hinder, delay and defraud the Plaintiff.

194-    Transfers were made shortly before or shortly after the debtor Chaudry incurred a

substantial debt or was about to incur a debt, or a judgement was about to be entered.

192-    **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff

and against Jahantab thus:

A.    avoiding the Fraudulent Transfers of the liquor/grocery store located at 4200 West

Armitage Avenue, and another liquor store at 4234 W. Fullerton Avenue, in Chicago.

B.    preserving the avoided Fraudulent Transfers for the benefit of the Plaintiff;

C.    awarding Plaintiff a money judgment against Jahantab of $1535,000.00 plus interest,

D.    granting all other relief which this Court deems is just and proper in the premises.

## Count X: Against Jahantab for Avoidance of Constructively Fraudulent Transfers for Liquor stores at 4200 W. Armitage & 4234 W. Fullerton, Chicago.

193-    For Count II of its Verified Complaint, Plaintiff incorporates the allegations contained in

the preceding paragraphs 1 through 141, and further states that in determining actual

intent under paragraph (1) of subsection (a), of 740 ILCS 160/5  of UFTA, Court should

give due consideration to the following badges of fraud:

194-    Jahantab made each of the Constructively Fraudulent Transfer of the Liquor/grocery

store located at 4200 West Armitage Avenue in Chicago, and  another liquor store at 4234

W. Fullerton Avenue, Chicago.

195-    Each of the Constructively Fraudulent Transfers were made without the transferor

receiving a reasonably equivalent value in exchange while the transferor was engaged or

was about to engage in a business or transaction for which its remaining assets were

unreasonably small in relation to its business or the transaction.

196-    Each of the Constructively Fraudulent Transfer was made without the transferor

receiving a reasonably equivalent value in exchange and the transferor intended to incur, or reasonably should have believed, that the transferor would incur debts beyond the transferor's ability to pay as the debts became due. Transfers were made to the son of a close friend.

197-  Transfers occurred shortly before or shortly after a substantial debt was incurred by the debtor Bashir Chaudry,

198-  Transfers were made to an insider, in this case to Jahantab, who is the son of debtor's friend Shah jee and were meant to hinder, delay and defraud the Plaintiff.

197-  **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against Jahantab, thus:

A:  avoiding the Constructively Fraudulent Transfers so made of the liquor store located at 4200 West Armitage Avenue and another located at 4234 W. Fullerton in Chicago.

B.  preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C.  awarding Plaintiff a money judgment against Jahantab, in the amount of the Constructively  Fraudulent Transfers of at least $1,535,000.00 plus pre-judgment interest, and costs of the proceeding;

D.  and granting all other relief which this Court deems is just and proper in the premises.

## Count XI: Against Rafiq for Avoidance of Actually Fraudulent Transfers

For Count XI of its verified Complaint, Sheikh incorporates the allegations contained in the preceding paragraphs 1 through 141 as if part and parcel of this Count, and further states as follows:

198-  Rafiq perpetrated each of the fraudulent transfers as identified herein this complaint by trying to conceal the ownership of the gas station located at 7283-87 S. Chicago Avenue.

199- These Transfers were made with the actual intent to hinder, delay or defraud Plaintiff.

200- These transfers made Chaudry Bashir insolvent and unable to pay his debts.

201- Transfers were made when Plaintiff had filed or was about to file a lawsuit against him, or a judgment was soon to be entered against Chaudry. The main goal and purpose of Rafiq was to put his or Chaudry Bashir's assets out of reach to the Plaintiff.

202- The transfers were concealed and were kept a close secret by Rafiq.

203- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff and against Rafiq, thus:

A. avoiding all fraudulent Transfers as itemized above.

B. preserving the avoided Transfers for the benefit of the Plaintiff;

C. awarding Plaintiff a money judgment against Rafiq for $1,535,000.00 plus interest,

D. granting all other relief which this Court deems is just and proper in the premises.

## Count XII: Against Rafiq for Avoidance of Constructively Fraudulent Transfers

204- For Count XII of its second Verified Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 141, and further states that in determining actual intent under paragraph (1) of subsection (a), of 740 ILCS 160/5 of UFTA, Court should give due consideration to the following badges of fraud:

205- Rafiq participated and engaged in making each of the Constructively Fraudulent Transfers identified herein above.

206- Each of the Constructively Fraudulent Transfers was made without the transferor receiving a reasonably equivalent value in exchange while the transferor was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business or the transaction.

207- Each of the Constructively Fraudulent Transfers was made without the transferor receiving a reasonably equivalent value in exchange and the transferor intended to incur, or reasonably should have believed, that the transferor would incur debts beyond the transferor's ability to pay as the debts became due.

207- Transfer was made to an insider, to a close friend of the debtor Chaudry Bashir,

208- Transfers occurred shortly before or shortly after debtor Chaudry incurred a substantial debt, after which transfer the debtor became insolvent.

209- Transfers were made with an intent to hinder, delay and defraud the Plaintiff.

208- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against Rafiq by:

A. avoiding all Constructively Fraudulent Transfers Rafiq made as itemized above;

B. preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C. awarding Plaintiff a money judgment against Rafiq in the amount of the Constructively Fraudulent Transfers and a minimum of $1,535,000.00 plus pre-judgment interest, and costs of these proceeding;

D. and granting all other relief which this Court deems is just and proper in the premises.

### Count XIII: Against Qadir's LLC, Ali and Rabia for Avoidance of Actually Fraudulent Transfers of the House at 7001 N. Keeler, Lincolnwood.

For Count XIII of its second verified Amended Complaint, Sheikh incorporates the allegations contained in the preceding paragraphs 1 through 141 as if part and parcel of this Count, and further states as follows:

209- Ali, Rabia and Qadir's LLC participated in and perpetrated each of the Fraudulent

Transfers as noted above by accepting $470,000.00 in cash and investing that money to purchase the house in Lincolnwood, Illinois, knowing that this activity was fraudulent and money being transferred by Bashir to his minor children Ali and daughter Rabia and newly minted LLC by was an attempt to fraudulently transfer their assets, and in doing so was to make that asset unreachable to the Plaintiff.

210- Fraudulent Transfer was made with the actual intent to hinder, delay or defraud Plaintiff.

211- These transfers made the debtors including the transferor Bashir insolvent and unable to pay the debts he owed.

212- Transfer was made when Plaintiff had filed a lawsuit against Bashir and a Court decision was expected or had been entered against the debtors and the debtors intended to put their assets out of reach to the Plaintiff.

213- The transfers were concealed and kept a close secret by Chaudry, Ali, Rabia and the limited liability Company newly minted for this fraudulent purpose,

214- Ali, Rabia and Qadir's LLC acted as a proxy whereas Chaudry Bashir controls his minor children and the Qadir's LLC., and controls and manages the property.

215- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff and against Ali, Rabia and Qadir's LLC by:

A. avoiding the Fraudulent Transfer of the single family house located at 7001 North Keeler Avenue in Lincolnwood, Illinois.

B. preserving the avoided Fraudulent Transfers for the benefit of the Plaintiff;

B. awarding Plaintiff a money judgment against Ali, Rabia and Qadir's LLC., of at least $1,535,000.00 plus post judgment interest and,

C.    granting all other relief which this Court deems is just and proper in the premises.

## Count XIV: Against Rabia, Ali and Qadir's LLC for Avoidance of

## Constructively Fraudulent Transfers

216-    For Count XIV of its second Verified Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 141, and further states that in determining actual intent under paragraph (1) of subsection (a), of 740 ILCS 160/5 of UFTA, Court should give due consideration to the following badges of fraud:

217-    Qadir's LLC, and Chaudry's minor children Ali and Rabia participated in the Constructively Fraudulent Transfer by receiving $470,000.00 in cash and for the purpose of hiding that cash, purchased a single family house in Lincolnwood, Illinois.

218-    The Constructively Fraudulent Transfer of cash and purchasing the house were made without the transferor receiving a reasonably equivalent value in exchange while the transferor was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business or the transaction.

219-    Transfers were made by debtor to his children.

220-    Despite the transfers, debtor Bashir Chaudry retains total control of the house and the income generated by the house.

221-    Transfers were made of substantially all of debtors assets.

22-    These transfers rendered Chaudry insolvent and unable to pay his debts.

223-    Transfers were of substantially all or almost all of debtor's assets and were made when a judgment had been rendered against Chaudry or was about to be rendered against him.

224-    Transfers were kept secret and not disclosed.

46

225-   Transfers were meant to hinder, delay, deny and defraud the Chaudry's creditors including the Plaintiff Sheikh,

220-   **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against Qadir's LLC, and Chaudry's minor children Ali and Rabia, thus:

A.   avoiding the Constructively Fraudulent Transfers of making $470,000.00 in cash to purchase the house at 7001 North Keeler Avenue, in Lincolnwood, Illinois.

B.   preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C.   awarding Plaintiff a money judgment against Qadir's LLC, Ali and Rabia, in the full amount of the Constructively Fraudulent Transfers of $470,000.00 plus pre-judgment interest, and costs of the proceedings;

D.   and granting all other relief which this Court deems is just and proper in the premises.

### Count XV: against Amjad Chaudry for Avoidance of

### Actually Fraudulent Transfers

For Count XV of its Verified Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 141, and further states that in determining actual intent under paragraph (1) of subsection (a), of 740 ILCS 160/5 of UFTA, Court should give due consideration to the following badges of fraud:

Amjad Chaudry is believed to have received $120,000.00 from debtor Bashir Chaudry and both acquired a grocery/liquor store in Wheeling. Under the arrangement worked out between Bashir and Arshad, the business will remain under the name of Amjad, but profits will be split equally between both principals.

246-   This Fraudulent Transfer was made with the actual intent to hinder, delay or defraud Plaintiff.

47

247-   These transfers made the debtors including the transferor Bashir Chaudry insolvent and unable to pay the debts he owed.

248-   Transfer was made when Plaintiff had filed a lawsuit against Chaudry Bashir and a Court decision was expected or had been entered against the debtors and the debtors intended to put their assets out of reach for the Plaintiff.

249-   The transfers were concealed and were kept a close secret by Bashir Chaudry and Arshad.

250-   Transfers occurred shortly before or shortly after a substantial debt was incurred by Chaudry Bashir and/or a judgement was about to be entered against him.

250-   Business is under Amjad's name whereas Bashir controls the business.

251-   **WHEREFORE,** Plaintiff prays that this Court enter a judgment in favor of the Plaintiff and against Chaudry Bashir, BCA and Amjad thus:

A.     avoiding the Fraudulent Transfer of this liquor and grocery store.

B.     preserving the avoided Fraudulent Transfers for the benefit of the Plaintiff;

C.     awarding Plaintiff a money judgment against Arshad and Bashir for $120,000.00, and

D.     granting all other relief which this Court deems is just and proper in the premises.

## Count XIX: Against Amjad & BCA for Avoidance of Constructively Fraudulent Transfers

252-   For Count XIV of its second Verified Complaint, Plaintiff incorporates the allegations contained in the preceding paragraphs 1 through 141, and further states that in determining actual intent under paragraph (1) of subsection (a), of 740 ILCS 160/5 of UFTA, Court should give due consideration to the following badges of fraud:

253-   Chaudry Bashir invested upwards of $120,000.00 to purchase the liquor grocery store and Amjad helped him conceal the cash and hide the ownership of the liquor store.

254-   Constructively and Fraudulently Transferring cash by Chaudry Bashir to Amjad and

purchasing the liquor store was made without the transferor receiving a reasonably equivalent value in exchange while the transferor was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to its business or the transaction.

255- Each of the Constructively Fraudulent Transfer was made without the transferor receiving a reasonably equivalent value in exchange and the transferor intended to incur, or reasonably should have believed, that the transferor would incur debts beyond the transferor's ability to pay as the debts became due. Transfers were made to an old friend Amjad.

256- Transfers were made with intent to hinder, delay and defraud the Plaintiff.

257- Transfers were concealed and conducted in secrecy.

258- Different entities, individuals and entities were used to hide the transaction.

256- **WHEREFORE,** Plaintiff prays that this Court enter a judgment in his favor and against Amjad, BCA and Bashir and thus:

A. avoiding the Constructively Fraudulent Transfers of making $120,000.00 in cash to purchase the Grocery store at 326 West Liberty Street in Wheaton, Illinois.

B. preserving the avoided Constructively Fraudulent Transfers for Plaintiff's benefit;

C. awarding Plaintiff a money judgment against Arshad in the full amount of the Constructively Fraudulent Transfers or a mimimum of $120,000.00, plus pre-judgment interest, and costs of the proceedings, proceedings,

D: and granting all other relief which this Court deems is just and proper in the premises.

*/ S / Zafar Sheikh*
Zafar Sheikh
4619 Herzog Street
Austin. TX. 78723.
(847) 414-9670
Zafarsheikh313@aol.com

## **V E R I F I C A T I O N**

I, Zafar Sheikh, a Plaintiff in these proceedings do hereby certify under oath, and under
the penalty of perjury, and knowing full well the consequences of perjury, state that I
have read the third amended Complaint and the allegations raised in this Complaint are
true and correct to the best of my knowledge and belief. Further if I am called to testify in
trial, I will testify as to the truth of each allegation raised herein.

*/ S / Zafar Sheikh*
Zafar Sheikh
4619 Herzog Street
Austin. TX. 78723.
(847) 414-9670
Zafarsheikh313@aol.com

## **CERTIFICATE  OF  SERVICE**

I, Zafar Sheikh, Plaintiff in this cause do hereby certify under oath and under the penalty
of perjury that I filed the third amended complaint on the 11th of November, 2025 and
further that I served it on all attorneys including Anthony Zac and Dan Garbis
on the same day and date thru Court's electronic system.

*/ S / Zafar Sheikh*
Zafar Sheikh
4619 Herzog Street
Austin. TX. 78723.
(847) 414-9670
Zafarsheikh313@aol.com